(Decided 21st February, 1873.)

---

MARY J. PAIRO, by JOHN P. POE, her next friend *vs.* HAZELTINE G. VICKERY, *et al.*, Administrators of THOMAS J. CARSON, and others.

*Equity— Transactions between Trustees and Cestuis que trust: how far affected by Lapse of time and Death of Trustee: Burden of proof in such Cases—Ratification of invalid instrument.*

A testator who died in January, 1865, devised to C., whom he also made his executor, all his estate, *in trust* during the life of the testator's mother to keep the same together and collect the income thereof, and out of said income to pay to testator's mother the sum of $2,000 *per annum.* All the residue of his property he then devised to his brother, his sister P., and another sister, in equal proportions, their heirs and personal representatives,

Pairo *vs.* Vickery, *et al.*, Adm'rs.

"to vest in them discharged from the trust created" above. C. took out letters testamentary under the will on the 26th of January, 1865. P. returned to the State, after an absence of two years, in April, 1865; and on the 27th of the same month, she and her husband made to C., a mortgage of all their estate and interest under said will. The consideration of this mortgage was a debt declared to be due by the husband of P. to C.; the condition made the debt and interest payable on demand; and the mortgage contained the usual assent to the passing of a decree for sale. The husband of P., was at the time insolvent, and his debt to C., was greater than the value of the property conveyed by the mortgage. On the 1st of September, 1866, P. and her husband united with the life annuitant and the other remainderman in a deed to C., of all their estate under the will *in trust*, to dispose of the same, and hold the proceeds subject to the claims of the grantors, excepting in so far as to pay to himself whatever might be due to him by P. and her husband by virtue of the foregoing mortgage. C. died in May, 1869, and in July, 1870, P., being then first informed of her rights, filed her bill, praying a decree annulling the mortgage and also the deed of trust so far as related thereto. HELD:

1st. That when the mortgage was executed, C. held the property as Trustee, and the transaction between P. and C., was within the established rules of equity, which govern dealings between trustees and *cestuis que trust,* the effect of the mortgage being to divest P. of her whole interest in the trust estate as completely as if it had been an absolute conveyance.

2d. That being such, it could not be supported as valid in a court of equity without satisfactory proof on the part of the mortgagee, that it was freely made by P., with full information as to her rights, and that no unfair advantage was taken of her circumstances.

3d. That the deed of trust could not operate as a ratification of the mortgage.

4th. That the lapse of time before the filing of the bill, and the death of C., did not bar the claim.

Upon principles of public policy, trustees are not allowed to purchase the trust property from the *cestius que trust*, or acquire rights therein which may bring their personal interests in conflict with their official duties.

While transactions between trustees and *cestuis que trust* are not void, they are discountenanced by Courts of Equity; the presumption is against their validity; and they are never upheld unless it clearly appear that they are free from all taint of unfairness. The *onus* of showing their perfect *bona fides* is upon the trustee.

Lapse of time, where it has been long and is unexplained, and death of parties, are sometimes ground for refusing relief, especially where in the mean time other parties have acquired rights, or there are other circumstances from which the Court can see that injustice might be done by interference; but in questions of this kind each case must depend upon its own circumstances.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by the appellant to set aside a mortgage executed by her, of certain trust property, to the appellees' intestate, her trustee. The facts are fully stated in the opinion of the Court. The Court below dismissed the appellant's bill on the ground of "the.death of Mr. Carson four years after the mortgage was executed, and the filing of the bill five years after its execution."

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER, ALVEY and ROBINSON, J.

*Charles E. Phelps,* for the appellant.

The vesting of the remainders at the death of Mrs. Edes, "discharged from the trusts," presumes a faithful performance of the trusts. The clause was for the benefit of the remaindermen, not for the protection or impunity of the trustee. At the time of the transactions in question in this suit, and during the life-time of Mrs. Edes, who is still living, the remainders were not and are not discharged from the trusts, but subject to them. Executors are in equity, trustees for creditors, distributees and legatees. 1 *Story's Eq. Jur.,* 593, 1067; *Hill on Trustees, top page* 238, *note*; *Hurtt vs. Fisher,* 1 *H. & G.,* 88; *Michoud vs. Girod,* 4 *How.,* 554.

And where executors have devolved upon them powers, duties or functions respecting the realty, the fiduciary relation extends over the realty, and executors are trustees also for devisees. *Cases cited in Perry on Trusts, sec.*

205; *Am. Note, Fox vs. Macreth,* 1 *Lead. Ca. Eq* , 162; 3 *Red. Wills,* 135, *note* 27.

Holding these relations as executor and trustee, one of the first acts of his administration, which embraced both personalty and realty, was the obtaining from the appellant a mortgage of all her interest in the estate, which was all the property she owned, to secure an antecedent debt of her insolvent husband, the latter of course uniting.

Independent of the question of fairness or undue advantage in the particular case, this transaction, thus begun and consummated, cannot upon general principles of public policy be permitted to stand, but is voidable as of course upon the reasonable application of the party interested, whether the transaction be regarded as a *purchase,* as a *security,* as a *bounty,* or generally as an *acquisition.*

The principal instrument is in form and in name a *mortgage,* but in substance and effect, in the view of a Court of Equity, an *absolute conveyance.*

The appellant's husband, who united in the mortgage, was insolvent. Outside of the property mortgaged, the appellant herself was penniless. The debt secured exceeded in amount the value of the property. The debt was payable "on demand," and the covenants were to pay "on demand." 1 *Pars. N. & B.,* 375. There was the usual consent to a decree, or a sale on default, and an omission of the usual proviso, giving the mortgagors possession until default, the mortgagee being already in possession as executor and trustee.

It results from these conditions that the equity of redemption professedly given, was in reality a fiction, or rather in the view of a Court of Equity, a cloak thrown over the genuine character of the transaction, which was in fact a *transfer* to *Carson* of *Mrs. Pairo's interest in part payment of Mr. Pairo's debt.* *Bromley vs. Smith,* 26 *Beav* , 644, 662.

This mortgage should therefore be treated as a *purchase,* and as such disposed of under the general rule.

The rule as to executors is peremptory. *Perry on Trusts, sec.* 205; 1 *Lea. Ca. Eq.*, 139 *and ca. ci.*; *Michoud vs. Girod,* 4 *How.*, 554; *Scott vs. Burch,* 6 *H. & J.*, 67; *Conway vs. Green,* 1 *H. & J* , 151.

The rule as to trustees, has in Maryland never been confined to the case of purchases by trustees of *themselves,* but has been applied to the case of purchases of the trust property from the c. q. t. or from anybody authorized to sell it. *Callis vs. Ridout,* 7 *G. & J.*, 1; *Bell vs. Webb,* 2 *Gill,* 163; *Highbergher vs. Stiffler,* 21 *Md.*, 338; *Smith vs. Townshend,* 27 *Md.*, 368; *Hoffman Co. vs. Cumberland Co.*, 16 *Md.*, 506; *Md. F. 1. Co. vs. Dalrymple,* 25 *Md.*, 255–6.

It does not help the transaction to call it one of suretyship, or of bounty. The principal debtor is not released nor his time extended. *Emerick vs. Coakley,* 35 *Md.*, 188. And even if forbearance had been stipulated, it would have made no difference in this case, since he was insolvent. Neither as executor nor as trustee could he lawfully convert his administration into an agency for the collection of his bad debts, by saddling them on the trust property. The statutory incidents of his character as mortgagee, in case of default and sale, were incompatible with his fiduciary status. *Code, Art.* 64, *sec.* 13; *Tennant vs. Trenchard, Law Rep.*, 4 *Ch. App.*, 537; *Hamilton vs. Wright,* 9 *Cl. & F.*, 111.

And generally, he will not be allowed to retain a benefit obtained at the expense of his c. q. t *Bromley vs. Smith,* 26 *Beav.*, 644, 622; *Greenlaw vs. King,* 3 *Beav.*, 49; *Savery vs. King,* 35 *E L. & E.*, 100, *and* 5 *Ho. Lds.*, 628; *Archer vs. Hudson,* 7 *Beav.*, 551; *Pennell vs. Miller,* 23 *Beav.*, 172; *Maitland vs. Irving,* 15 *Sim.*, 437; *Callis vs. Ridout,* 7 *G. & J.*, 1; *Bell vs. Webb,* 2 *Gill,* 164; 1 *Story Eq.*, 322; *Huguenin vs. Baseley,* 3 *Lea. Ca.*, 463, (*Am. Ed.*, 24.)

It results from the above cases, that if Carson had, with perfect good faith, actually loaned his money to Mrs.

Pairo for her own use upon the security, the mortgage would be set aside as of course, at her instance, on reasonable terms.

Apart from the fiduciary relations of the parties, there is an independent and cumulative equity merging in the same relief. The case comes under the well established chancery rule which avoids all transactions with remaindermen or reversioners, unless upon proof of fairness and entire adequacy of consideration. *Smith's Man Eq.*, 87; 1 *Story Eq.*, 337, 338, &c.; 2 *Kent's Com.*, 475, note *a*; 1 *Sug. Vend.*, Ch. 6, sec. 23, &c.

This doctrine applies to *mortgages*, and even where the party was of mature age, and fully understood the situation. *Bromley vs. Smith*, 26 *Beav.*, 644, 662; *Tynte vs. Hodges*, 2 *Hem. & M.*, 287; *Salter vs. Bradshaw*, 26 *Beav.*, 161; *St. Albyn vs. Harding*, 27 *Beav.*, 11; *Talbot vs. Stainforth*, 1 *Johns. & H.*, 484; *Foster vs. Roberts*, 29 *Beav.*, 467; *Jones vs. Ricketts*, 31 *Beav.*, 130; *Sharp vs. Leach*, 31 *Beav.*, 491; *Nesbitt vs. Berridge*, 32 *Beav.*, 282; *Dally vs. Wonham*, 33 *Beav.*, 154, 162; *Perfect vs. Lane*, 3 *D. F. & J.*, 369; *Boynton vs. Hubbard*, 7 *Mass.*, 112; *Butler vs. Haskell*, 4 *Des.*, 651; *Osgood vs. Franklin*, 2 *John., Ch.* 25; *Jenkins vs. Pye*, 12 *Pet.*, 257.

Actual fraud, never to be presumed; almost incapable of direct proof; may be inferred from the situation, conduct and relations of the parties, the character of the transaction, both as to its form and effect, and from all the surrounding circumstances. *Brogden vs. Walker*, 2 *H. & J.*, 285; *Curtis vs. Moore*, 20 *Md.*, 93.

But whether with or without actual fraud, the Court below manifestly erred in placing its determination upon the death of Carson, before the bill was filed. Even in the lowest view that can be taken, as a case of *onus* on the trustee, no proof could sustain this transaction, if the trustee were alive and in Court. *Prees vs. Coke, Law Rep.*, 6, *Ch. App.*, 645; *Todd vs. Grove*, 33 *Md.*, 195;

*Ellinger vs. Crowl*, 17 *Md.*, 361, 374, 375 ; *Betts vs. Union Bank*, 1 *H. & G.*, 175.

As to Laches; there is no lapse of time against a remainderman before death of life-tenant. *Hill on Trustees*, 266, 414, 528 ; *F. & M. Bank vs. Wayman*, 5 *Gill*, 358 ; *Salter vs. Bradshaw*, 26 *Beav.*, 161 ; *Life Association of Scotland vs. Siddall*, 3 *D. F. & J.*, 72.

There was disability of coverture. 5 *Gill*, 355 ; *Oehler vs. Walker*, 2 *H. & G.*, 323, 326–7 ; *Hill on Trustees*, 527; *Bowie vs. Stonestreet*, 6 *Md.*, 431, 432.

There is no *laches* without acquiescence. *Kerr on Frauds*, (*Am. Ed.*,) 305, and no acquiescence without knowledge of rights. *Kerr*, 300, 301; *Hill*, 168–527; *Hoffman Co. vs. Cumberland Co.*, 16 *Md.*, 508-9 ; *Life Association vs. Siddall*, 3 *D. F. & J.*, 74.

The Court erred in ignoring the circumstances which led to the filing of the bill. It is the only proof ever available in cases of this nature, if indeed it be required that the party should prove a negative at all. It is settled that the *onus* is upon the other side.

Poverty alone is no answer to *laches*, but sufficiently accounts in this case for her not seeking legal advice, in connection with the fact that she was lulled by Carson himself. A year and a half after the mortgage, she quit-claimed her equity of redemption in manifest ignorance of her rights, by executing presumably at his instance, the deed of trust. *Prees vs. Coke*, L. R., 6, *Ch. App.*, 645, 649-50 ; *Savery vs. King*, 5 *Ho. Ld.*, 628, 666.

Since there was in this case no "lying by," the death of the trustee is without significance, in connection with the question of time, and the law has equalized the parties by sealing the lips of the appellant. *Act of* 1868, *ch.* 116.

As to the *time* elapsed, the decision below is without precedent.

In *Highberger vs. Stiffler*, 21 *Md.*, 338, (reaffirmed in *Todd vs. Grove*, 33 *Md.*, 195,) the deed was set aside on a

bill filed after a lapse of eight years, and two years after death of trustee. *Smith, ex'or of Hoye vs. Townsend*, 27 *Md.*, 368 ; *Oehler vs. Walker*, 2 *H. & G.*, 323 ; *Baxter vs. Sewell*, 2 *Md. Ch. Dec.*, 447, 3 *Md.*, 334 ; *Hanson vs. Worthington*, 12 *Md.*, 437 ; *Bell vs. Webb*, 2 *Gill*, 163 ; *Bank vs. Wayman*, 5 *Gill*, 336 ; *Bowie vs. Stonestreet*, 6 *Md.*, 418 ; *McDowell vs. Goldsmith*, 2 *Md. Ch. Dec.*, 370, affirmed in 6 *Md.*, 317 ; *Michoud vs. Girod*, 4 *How.*, 503 ; *Prees vs. Coke, Law Rep.*, 6, *Ch. App.*, 645 ; *Savory vs. King*, 35 *Eng. L. & Eq.*, 100, same case, 5 *Ho. of Ld.*, 628; *Greenlaw vs. King*, 3 *Beav.*, 49 ; *Hatch vs. Hatch*, 9 *Ves.*, 292 ; *Pennell vs. Miller*, 23 *Beav.*, 172 ; *Salter vs. Bradshaw*, 26 *Beav.*, 161 ; *St. Albyn vs. Harding*, 27 *Beav.*, 11 ; *Sharp vs. Leach*, 31 *Beav.*, 491 ; *Charter vs. Travelyan*, 11 *Cl. & F.*, 714 ; *Deloraine vs. Browne*, 3 *Bro. C. R.*, 633 ; *Gartside vs. Isherwood*, 1 *Bro. Ch. R., App.*, 558 ; *Walmesley vs. Booth*, 2 *Atk.*, 25 ; *Randall vs. Errington*, 10 *Ves.*, 423 ; *Purcell vs. Macnamara*, 14 *Ves.*, 91 ; *Pickett vs. Loggen*, 14 *Ves.*, 214 ; *Murray vs. Palmer*, 2 *Sch. & L.*, 474 ; *Maloney vs. L'Estrange, Beat.*, 406 ; *Roche vs. O'Brien*, 1 *Ball & B.*, 330 ; *Oliver vs. Court*, 8 *Price*, 127 ; *Att'y Gen'l vs. Lord Dudley, Coop.* 146 ; *Aylward vs. Kearney*, 2 *Ball & Beat.*, 463 ; *Gowland vs DeFaria*, 17 *Ves.*, 20 ; *Stilwell vs. Wilkens, Jac.*, 280 ; *Earl of Portmore vs. Taylor*, 4 *Sim.*, 182 ; *Life Association of Scotland vs. Siddall*, 3 *De Gex F. & J.*, 58.

In *Chalmer vs. Bradley*, 1 *Jac. & W.*, 51, 60, "there were three successive wills by three successive generations, from 1770 to 1814, during which period the estate is enjoyed by the trustee, and those claiming under him, and no demand made upon them." Notwithstanding this delay, and the improved value of the estate, the Court did not dismiss the bill, but directed an inquiry to ascertain whether or not the delay had been *with knowledge*. See *Brown vs. Carter*, 5 *Ves.*, 862 ; *Morse vs. Royal*, 12 *Ves.*, 353 ; *Jenkins vs. Pye*, 12 *Pet.*, 241.

Each case, as to laches, depends on its own circumstances. *Hanson vs. Worthington*, 12 *Md.*, 441.

Even admitting that a feme covert remainderman, c. q. t., whose husband is a necessary party defendant, can be charged with laches at all, the case comes down to the simple question: Did Mrs. Pairo, during the interval between 1st September, 1866, (date of the deed of trust,) and 13th May, 1869, (date of Carson's death,) and from that to the 14th July, 1870, (date of suit,) *lie by*, with knowledge of her rights? And on this issue the *onus* is upon the affirmative. *Cumberland Co. vs. Sherman*, 20 *Md.*, 134–5, 151.

*Samuel Snowden* and *I. Nevett Steele*, for the appellees.

Under the will of Edes, Carson as trustee, was only the tenant during the life of Mrs. Edes, and never occupied the position of trustee for Mrs. Pairo. *Selby vs. Williss*, 4 *H. & J.*, 242 ; *Park vs Cheek*, 4 *Cole.*, 20 ; *Curtiss vs. Price*, 12 *Ves.*, 89, 98 ; *Doe vs. Hicks*, 7 *Term*, 433 ; *Goodtitle vs. Whitby*, 5 *Burr.*, 228 ; *Right vs. Cuber*, 5 *B. & C.*, 866 ; *Player vs. Nichols*, 1 *B. & C.*, 336 ; *White vs. Simpson*, 5 *East*, 162; *Robinson vs. Grey*, 9 *East*, 1 ; *Woodcock vs. Barthrop*, 5 *Taun.*, 385.

The evident intention of the testator was, that Carson should as trustee keep the property together during the life of Mrs. Edes for the purpose of collecting and paying to her an annuity of $2,000, and retaining the surplus. The whole trust has relation to her. The testator kept her steadily in view, and it was a natural sequence in his mind that he should direct the trust to terminate at her death. *Fitzpatrick's Appeal*, 49 *Pa. S. R.*, 244.

As, therefore, Carson only took the estate for the life of Mrs. Edes, and the legal estate in the limitation over was executed by the statute in the parties in remainder, no trust in their favor was vested in him, and the relation of trustee and *cestui que trust* between them and Car-

son was never created. So soon as Mrs. Edes died, the trust ceases, and the title vests in the parties in remainder without the performance of any act by Carson. *Parker vs Converse,* 5 *Gray,* 336; *Greenwood vs. Coleman,* 34 *Ala* , 150; *Churchill vs. Corker,* 25 *Geo.,* 479.

But supposing that Carson was by the terms of the will a trustee for the parties in remainder, then it is admitted that purchases of the trust property by trustees at their own sales may be set aside as of course at the election of the *cestui que trust.* But this right does not exist to the same extent in cases of purchases by trustees from the *cestui que trust,* or by the consent of the *cestui que trust,* when made by the trustee at his own sale. 1 *Leading Cases in Equity,* 125.

In the last cases he is not under an absolute disability to purchase, and it is not a general rule that a Court of Equity will set such purchases aside, but each case depends upon its own facts and circumstances. *Ayliffe vs. Murray,* 2 *Atk.,* 58; *Farnam vs. Brooks,* 9 *Pick.,* 212; *Spindler vs. Atkinson,* 3 *Md.,* 409; *Ex parte Lacey,* 6 *Ves.,* 626.

And when it appears that the *cestui que trust* intended the trustee to buy, and there is no fraud, no concealment, no advantage taken by the trustee of information acquired by him in the character of trustee, the transaction will be supported. *Coles vs. Trecothick,* 9 *Ves.,* 234; *Buell vs. Buckingham,* 16 *Iowa,* 286; *Perry on Trusts, sec.* 195, *and authorities cited.*

If the transaction in this case is to be treated as a purchase, the circumstances attending it as they appear upon the face of the papers, are such as to gratify the foregoing rules. Mr. Pairo becomes indebted to Mr. Carson in a very large amount of money, and being desirous of securing the payment thereof, his wife, with the view of aiding her husband, and with his consent, executes a conveyance by way of mortgage to Carson of all her interest in the estate of Edes. There was here no fraud,

no concealment, and no advantage taken by him of knowledge acquired as trustee. She had the advice and assistance of her husband in the transaction, and cannot be said to have confided in Carson. But the transaction was not in itself a purchase, but a mortgage of her interest, which was only accessory to the principal thing—the debt. *Pratt vs. Van Wyck,* 6 *Gill & J* , 495 ; *Dougherty vs. McColgan,* 6 *G. & J.,* 275 ; 1 *Hilliard on Mortgages,* 215.

Upon the payment of the debt the whole interest in the estate immediately revested in her. The rules in reference to purchases by trustees from *cestuis que trust* do not apply, because Carson could get nothing more than his debt, and all the interest in the property after the payment of the debt still remained in Mrs. Pairo, and she must derive all the advantage from its increase in value. Carson could have concealed nothing from her that would have affected the transaction, for all that was necessary to be known by her was the amount of the debt, and the fact that she desired to secure it upon her interest in the estate of Edes. She was not deceived by Carson, for she intended he should have the mortgage, and dealt with her eyes open. *Hylton vs. Hylton,* 2 *Ves. Sr.,* 549 ; *Sping vs. Pride,* 10 *Jur., (N. S.,)* 648.

The rule of public policy which prevents a trustee from buying at his own sale, or even from a *cestui que trust,* is not violated when the trustee takes a mortgage. For, supposing the property to be neither more nor less than his debt, he does not buy it, and therefore gains nothing by the knowledge that he possesses of its value, nor could the *cestui que trust* be injured. Nor does the trustee by taking a mortgage place himself in a position antagonistic to the interests of the *cestuis que trust,* but on the contrary it becomes his interest to obtain the best price he can, especially where there is but a small margin for his security, as in this case. There is no proof that the hus-

band of the complainant was insolvent at the time of the execution of the mortgage, but even if he was, and even though it encumbered all the property the appellant had, or that the mortgage contained an assent for a decree or an omission of the clause for possession, or that the debt was payable on demand, would not alter the nature of the transaction, or turn an absolute deed into a mortgage. Nor is it so recognized in the deed of trust; on the contrary it is there referred to as a mortgage, and there are no extrinsic facts from which the Court could infer that Carson intended to possess himself of the estate; certainly the mere facts of the execution of the deed and mortgage are not sufficient. The mortgage in this case was not intended as a bounty to Carson, but to aid the husband of the appellant, and the consideration in law is equal, whether she pledged her property to secure her own debt or the debt of her husband. 1 *Buck's B. Cases*, 165, *Ex parte Hearn.*

Such a conveyance is not voluntary, but for a valuable consideration. *Marden vs. Babcock*, 3 *Met.*, 104.

She could by means of her separate property, become a surety for the payment of her husband's debts. *Johns vs. Reardon*, 11 *Md.*, 465. The mortgage having been executed with all the formalities required by law is binding upon the appellant. *Morris vs. Harris*, 9 *Gill*, 28; *Cooke vs. Husbands*, 11 *Md.*, 492; *Galway vs. Fullerton*, 2 *C. E. Green*, 391; *Emerick vs. Coakley*, 35 *Md.*, 188.

And a sale by a husband and wife to the trustee of the trust property to pay the debt of the husband will be sustained. *Bryan vs. Duncan*, 11 *Geo.*, 71, (77.)

The contract by which she became surety being under seal, the debt of her husband is a sufficient consideration to support it, and because she has since altered her intention, it does not furnish a sufficient reason to induce a Court of Equity to interpose and cancel the mortgage which bears upon its face the evidence of having been

deliberately executed by her.    *Toker vs. Toker*, 31 *Beav.*, 644.

Even if the appellant by filing her bill in the life-time of Carson, without having acquiesced in the execution of the mortgage, could have thrown upon him the burden of showing the fairness and honesty of the transaction, she has lost the right to do so by waiting until after the death of Carson, and by allowing so much time to elapse, before instituting proceedings to set aside the mortgage. *Morse vs. Royal*, 12 *Ves.*, 355 ; *Prevost vs. Gratz*, 6 *Wheat*, 498 ; *Potts vs. Surr.*, 34 *Beav.*, 554 ; *Hatch vs. Hatch*, 9 *Ves.*, 292 ; *Johnson vs. Jones*, 13 *S. & M.*, 583 ; *Jones vs. Smith*, 33 *Miss.*, 264 ; *Champion vs. Rigby*, 5 *Eng. Ch. Rep.*, 539.

If there were any threats or duress used by Carson to the appellant, she was aware of them at the time of the execution of the mortgage, and could have instituted proceedings immediately to vacate the mortgage, but instead of doing that, she has waited until his lips are sealed in death before she exhibited any bill—and it is the very case put in *Morse vs. Royal*, (378.)  "*She has, without design, put it out of the power of the Court to see the wrong with the distinctness that is necessary in order to enable her to act,*" and, therefore, cannot claim the application by the Court of the rule which throws upon the fiduciary the *onus* of proving the fairness of the transaction.  On the contrary, on account of the lapse of time and the death of the trustee, the Court will presume that if the trustee was living he would bring forward the witnesses who would establish its perfect fairness, and that it was the voluntary act of the appellant in order to aid and assist her husband.  It would be most unjust by the application of a technical rule, to take from the creditors of Carson, some of whose debts were contracted after the date of said mortgage, and who are represented by the administrators, such a large sum of money, for their equity is stronger than hers.

About eighteen months after the execution of the mortgage, Mrs. Pairo united with her husband and the other devisees in the execution of a deed of trust to Carson, in which she recognizes the existence of the mortgage as a subsisting lien upon the property. There were no confidential relations existing at the time, but they dealt at arms length, and yet she authorized him to retain so much of the proceeds as might be necessary to pay the mortgage debt, thus clearly acquiescing in the existing mortgage, and showing that she understood the transaction at the time not to be fraudulent.

The deed of trust was executed by all the parties, and was more for the benefit of the grantors than of Carson—and it would be a new presumption of law to presume it was done at his instance. The question of *laches* is one for the exercise of the Court's discretion. And as this is the separate property and estate of the appellant, she must be regarded as a *feme sole*, and therefore chargeable with *laches*. *Lewin on Trusts, pages* 540 *and* 541.

In all the cases cited by the appellant in regard to the length of time, it will be found that the complainant assumed the burthen of proof, and put all the facts before the Court so as to make out a *prima facie* case, but in this case the complainant has proved nothing, and has failed entirely to meet the ordinary responsibility imposed upon a complainant. Her bill should, therefore, be dismissed for want of proof.

The doctrine of Courts of Equity which avoids all transactions with expectant heirs, unless upon proof of fairness and entire adequacy of consideration, was said by Lord Eldon, in *Cole vs. Trecothick*, "*to depend upon a very different set of principles from those applicable to purchases by trustee from cestuis que trust.*" It never has been adopted in this State, and its soundness has been doubted in a recent case in England. 1 *Taylor's Ev.*, *sec.* 129a; *Webster vs. Cook*, 2 *Law Rep. Ch. Ap.*, 542.

And it has been finally abolished by Act of Parliament. 31 *Vict. ch.* 4, *sec.* 1.

It cannot now be considered as law. But even if it is, it does not apply to the sale or mortgage of a reversion or remainder. *Perry on Trusts, sec.* 188.

That actual fraud cannot be presumed, but must be proved, though it may be inferred from facts and circumstances, is a well settled principle. 3 *Gr. Ev., secs.* 254 *and* 254a.

In this case there has been no attempt to prove it. Nor are there such facts or circumstances shown as to authorize a Court of Equity to infer it.

The appellant acted in the making of the mortgage as a high-minded lady who was desirous of assisting her husband in his troubles, and she could not have made a disposition of her property, which would have been more approved of by a Court of Equity than to apply it to the payment of her husband's debt. *Ryder vs. Session,* 7 *R. J.*, 344.

The Court will only set aside dealings between parties occupying fiduciary relations, in the absence of actual fraud, upon the condition that the money secured by the instrument, or the consideration money paid, be repaid. *Callis vs. Ridout,* 7 *G. & J.,* 1 ; *Bell vs. Webb,* 2 *Gill,* 163 ; *Mason vs. Marsh,* 4 *Md.,* 124 ; *Lewin on Trusts,* 365.

There is no actual fraud proved in this case, and therefore, in the event of the setting aside of the mortgage, the Court will order the money secured thereby to be repaid.

BARTOL, C. J., delivered the opinion of the Court.

The facts of this case as disclosed by the record, so far as it appears material to state them, are as follows :

On the 20th day of January, 1865, Samuel C. Edes made his last will; by the tenth clause of which he devised "to Thomas J. Carson, his heirs and personal representatives, all his estate, effects and property real,

personal and mixed, wheresoever situate, in trust and confidence, for the objects and purposes in this clause of his will declared concerning the same; that is to say: that during the natural life of his mother, his estate and property of every kind, (excepting the money and property devised and bequeathed by the preceding provisions of his will,) shall be preserved and kept together by his executor, hereinafter appointed; who was thereby fully authorized to collect and receive all the income, rents and profits of the same; and he thereby directed that his executor, out of said income, rents and profits, should pay to his (testator's) mother, the sum of two thousand dollars *per annum*, so long as she shall live, in quarterly instalments, &c., accounting from the day of his decease."

The eleventh clause of his will was as follows:

"Immediately after the decease of my said mother, I will and devise all the rest and residue of my property, real, personal, and mixed, not hereinbefore devised and bequeathed, to my brother Richard Andrew Edes, my sister Mary Jane Pairo, and my sister Elizabeth W. Long, in equal proportions, share and share alike, to them and each of them, their heirs and personal representatives; excepting only, and provided, that if my said brother shall marry within three years after our mother's death, then and in that case, I bequeath to him the sum of three thousand dollars, to be allowed to him out of the principal amount and interest due me on certain promissory notes of my said brother, now held by me, (and which are not to be collected until a general division is made of my estate,) over and above what, by this section, is devised to my two sisters aforesaid.   The property and money devised and bequeathed by this section to my said brother and sisters, are to vest in them, discharged from the trust created in item ten of this will."

He appointed Thomas J. Carson executor, who took out letters testamentary on the 26th day of January, 1865.

At that time Mrs. Pairo, the appellant, who was one of the devisees in remainder, was absent from the State, having been sent South by the military authorities in 1863. She returned to her home in Baltimore in April, 1865; and on the 27th day of the same month executed and delivered to Thomas J. Carson the mortgage which she now, by her bill of complaint, prays to have annulled and set aside.

The mortgage, in which her husband, Charles W. Pairo, united, conveyed to Thomas J. Carson, his heirs, executors, &c., " *all the estate and interest, right, title, property,* claim and demand, whatsoever, of Pairo and wife, and each of, them, of, in, into and out of all the estate, real, personal and mixed, whereof the late Samuel C. Edes, died seized, or possessed, or was in any manner entitled to, interested in, or could claim."

The consideration stated in the mortgage was a debt of $16,864.86, recited therein, to be due and owing by Chas. W. Pairo to Thomas J. Carson; and its purpose was to secure the payment thereof with interest from the 24th day of April, 1865.

By the condition in the mortgage the debt and interest were payable on demand; and the instrument contained an assent to the passing of a decree for the sale of the property.

The appellant charges in her bill of complaint that the mortgage was extorted from her by Carson, by cruelty, and by means of threats that, unless his demands were complied with, he would dismiss her husband from his place in his (Carson's) banking house; and destroy his business position and prospects. These grave charges have not been supported by legal proof; the testimony of Mrs. Long on that subject, being merely a repetition of the statements made to her by the appellant herself, are of course, inadmissible.

We do not consider it necessary to advert to the state of mental excitement under which Mrs. Pairo was suffer-

ing at the time the mortgage was executed, as described in the testimony of Mrs. Long; and which has been referred to by her counsel as furnishing ground for impeaching the mortgage. In our opinion, there is a fatal objection to its validity, growing out of the fiduciary relation of Carson, with respect to the mortgagor, and to the property conveyed, which existed at the time of the mortgage, and which, under the circumstances of this case, entitles the appellant to equitable relief.

Under the will of Samuel C. Edes, Carson was charged with the two-fold duty of trustee and executor. The will vested in him the legal estate for the purposes of the trusts; it required him to keep the property together during the life of testator's mother, to collect the income, rents and profits, and out of them to pay Mrs. Edes her annuity of $2,000 per annum; and at her death, to turn over the whole estate, real and personal, to the legatees and devisees in remainder, with the accumulations unimpaired, except by the payment of the annuity.

The appellant, as one of the devisees in remainder, had a vested interest or equitable estate under the will, which could not come into possession until after the death of Mrs. Edes, the life annuitant. During her life the legal estate was held by Carson, as trustee both for the life annuitant and the devisees in remainder, who were interested in the faithful performance of his duties, both as trustee and executor.

When the mortgage was executed Mrs. Edes was living, and Carson held the property as trustee. The transaction, therefore, falls within the established rules of equity, which govern dealings between trustees and *cestuis que trust*, with respect to the trust property, and conveyances of the same to the trustee.

Upon principles of public policy, for the prevention of fraud, and to remove from trustees all temptation to violate their duties, by securing to themselves profit and

advantage at the expense of those whose property and interests are confided to their charge, they are not allowed to purchase the property from the *cestuis que trust*, or acquire rights therein which may bring their personal interests in conflict with the discharge of their official duties. It has been held in numerous cases, and is well settled, that while such transactions are not absolutely void, they are discountenanced by Courts of Equity; the presumption is against their validity, and they are never upheld unless it clearly appear that they are free from all taint or suspicion of unfairness. The *onus* of showing their perfect *bona fides* is cast upon the party who sets them up, and not upon the *cestuis que trust* who assails them. In support of this proposition many authorities might be cited; but it is sufficient to refer to *Smith vs. Townsend*, 27 *Md.*, 388, and the authorities there cited, and those collected in *Hill on Trustees*, 247, *note* 2, *(4th Ed.*,) and in 1 *Story's Eq. J.*, secs. 321, 322, *and notes.*

In view of this well settled rule, it seems to us that the mortgage in this case cannot be supported. It has been argued by the appellees' counsel, that being a mere charge or security, and not an absolute conveyance of the property, it does not fall within the rule above stated. But we think, when we look at the facts and circumstances as disclosed by the record, and apparent on the face of the mortgage, that there is no ground for such a distinction. The effect of the instrument was to divest Mrs. Pairo of her whole interest in the trust estate as completely as if it had been an absolute conveyance. It is stated in the answer that the whole property conveyed is insufficient to pay the debt it was intended to secure; the equity of redemption therefore was of no substantial value. Pairo, the debtor, was insolvent; the debt was by the terms of the mortgage payable on demand, and was liable to be foreclosed immediately. Certainly no more effectual instrument could have been devised to divest the appel-

lant of her whole trust estate. It is, therefore, obnoxious to the same objection, as if it had been an absolute conveyance; and under the rule we have stated will not be supported as valid in a Court of Equity, in the absence of complete and satisfactory proof on the part of the mortgagee, or those claiming under him, that it was freely and voluntarily made by the appellant, with full information as to her rights, and that no unfair advantage was taken of her condition and circumstances.

We consider it perfectly clear upon the authorities and for the reasons stated, that if this bill had been filed during the life-time of Carson, a Court of Equity could not hesitate, upon the state of facts disclosed by the record, to set aside the 'mortgage, without any imputation of actual fraud, or fraudulent intent on the part of the trustee in procuring it. It would be declared invalid upon the high ground of public policy, which we have before stated is the foundation of the rule.

It remains to be considered whether anything has occurred since the mortgage was executed, to deprive the appellant of equitable relief.

It has been contended that the deed of trust, executed by the appellant and others on the first day of September, 1866, operated as a confirmation of the mortgage. This point was not much pressed by the appellees in the argument, and we think it very clear that the deed can have no such operation or effect. It was not intended as a confirmation, it simply refers to the mortgage as existing, and recognizes the right of Carson to pay to himself the mortgage debt out of Mrs. Pairo's share of the money arising from the sale of the trust property.

"In order to constitute a valid confirmation, a person must be aware that the act he is doing will have the effect of confirming an impeachable transaction." 1 *Lead. Ca., in Equity,* 117 *m,* and cases there cited.

In 16 *Md.,* 456, and 20 *Md.,* 151, it was said, "to make an act of ratification effective the *cestui que trust* must not

Pairo *vs.* Vickery, *et al.*, Adm'rs.

only have been acquainted with the facts, but apprised of the law, how those facts would be dealt with if brought before a Court of Equity.'' The deed of trust has none of the essential qualities, to give it the force and effect of a ratification of the mortgage. The main ground of defence relied on by the appellees, is the lapse of time since the mortgage was executed, and the death of Carson before the bill was filed. It was upon this ground that the Judge of the Circuit Court refused to grant relief, at the same time expressing his want of entire satisfaction with the conclusion to which he came.

We have had the benefit of a most full and elaborate argument, and have been referred to a great number of authorities bearing upon this, as well as the other questions in the case; all of which we have examined; and have found none which we think would justify us in refusing to the appellant relief in this case, on account of supposed *laches* on her part, or lapse of time in filing her bill, or by reason of the death of Carson.

This we think will be manifest by reference to the cases cited and relied upon by the appellees' counsel in support of the fourth point of their brief. In some of them, lapse of time, and the death of parties have been considered as circumstances affecting the equitable rights of the complainant to relief; and when the delay has been for a long period of time, without excuse or explanation; it has been sometimes regarded as sufficient ground for refusing relief, especially where, in the meantime, other parties have acquired rights; or there have been other facts and circumstances from which the Court could see that injustice might be done by annulling a transaction, which had been long acquiesced in by the complainant.

On the other hand, a great many cases have been cited in which relief has been granted after the lapse of a much longer time, than has occurred in this; and where too the party, upon whom the law casts the *onus* of explaining the transaction, had died before the bill was filed.

To refer to the cases particularly, and to point out the special circumstances in each, which controlled the judgment of the Court, would require this opinion to be extended to too great length.

While we recognize it as a salutary rule, that Courts of Equity will refuse their aid to parties who have "slept upon their rights, and acquiesced for a great length of time," before seeking relief, yet in dealing with a question of this kind, each case must necessarily depend very much on its own circumstances, and looking at this case in the light of the authorities, we do not find that there has been any such laches and delay on the part of the appellant as ought, in equity, to deprive her of relief.

The bill was filed in 1870, five years after the execution of the mortgage. Carson died in 1869. We lay less stress upon the circumstance of his death, because the invalidity of the transaction impeached, depends mainly on the relations of the parties to each other, and the intrinsic nature of the transaction itself, as disclosed on the face of the mortgage, rather than upon any extrinsic circumstances; and besides, the law has in some measure equalized the parties, by making the appellant an incompetent witness; because Carson is not living to testify. (Act of 1868, ch. 116).

The delay in filing the bill is explained by the fact appearing from the testimony of Mrs. Long, in her answer to the 13th interrogatory, (to which no exception was taken,) that the appellant was not informed of her legal right to impeach the mortgage until in May, 1870 ; when for the first time she had the benefit of legal advice.

Her delay therefore could not he construed into acquiescence.

The principles upon which Courts of Equity proceed in determining the effect of length of time upon the rights of a party in a suit of this kind, are laid down in *Hatch vs. Hatch*, 9 *Ves.*, 292 ; *Morse vs. Royal*, 12 *Ves.*, 355 ;

and *Wright vs. Vanderplank*, 8 *DeG., McN. & G.*, 133; cited by appellees' counsel.

In *Hatch vs. Hatch*, where the bill was filed in 1800 to impeach a transaction which took place in 1780, Lord ELDON said: "I do not deny, that length of time is of great consequence in all these cases of fraud, breach of the policy of the law, &c. But in all cases it is some evidence, that the transaction was understood at the time not to be fraudulent; and that there might have been some circumstances of the possibility of which the party ought to have the advantage."

He then adds: "But the evidence in this case is the answer," &c. In that case the transaction was set aside.

In *Morse vs. Royal*, Ld. Ch. ERSKINE said, "As to the effect of length of time, where there is no bar by the Statute of Limitations, a Court of Equity will never lay down as a general proposition, that though the fact, that imposition has been practiced, is established, the party is too late; and by the accident of the death of the person who might have contradicted him, shall be deprived of his right to relief. The true operation of length of time is by way of evidence." * * * * * * * * And in the same case he says: "The point upon the length of time is put thus: that I must shift the proof from the one to the other. I do not know, that I am to go to that length. I am to see that the transaction was fair; that no advantage was taken; that there was no concealment."

These decisions were followed in *Wright vs. Vanderplank*, where the Ld. J. TURNER after quoting the language of Ld. ELDON in *Hatch vs. Hatch*, says of the case before him, which was a bill to set aside a deed of gift from a daughter to her father: "The parties knew of their right to impeach the gift, and left the defendant to live on the income, and after ten years come to make him account. Looking at the lapse of time, and to the fixed, unbiased and deliberate intention of not impeaching the deed, which

in, my opinion must be attributed to the daughter, I think the bill was rightly dismissed.''

We do not find any thing in the principles established by these decisions, or cited in the argument, which, in our judgment, ought to deprive the appellant of relief.

There are no facts or circumstances disclosed by the record, from which it can be inferred, that she ratified the mortgage, or acquiesced in it with a knowledge of her rights to impeach it. The mere lapse of time, and the death of Carson, are not of themselves sufficient to bar her claim; and having instituted her suit without delay after being informed of her rights, we are of opinion, that she is entitled to relief. The decree of the Circuit Court will therefore be reversed, and the cause remanded, in order that a decree may be passed annulling and setting aside the deed of mortgage of the 27th day of April, 1865, and so much of the deed of trust of the first day of September, 1866, as relates to the said mortgage, in so far as the rights of the appellant are concerned; reserving, however, the rights of the appellees, under said mortgage and deed of trust, in so far as they may operate to convey any interest or estate in the property therein mentioned of Charles W. Pairo, the husband of the appellant. And under the prayer for general relief, the appellant is entitled to a decree requiring an account of the trust property.

*Decree reversed and*
*cause remanded.*

(Decided 21st February, 1873.)