# CIRCUIT COURT OF BALTIMORE CITY

Filed October 26, 1891.

ELIZABETH WHITRIDGE
VS.
WM. H. WHITRIDGE, ET AL.

*A. W. Machen, J. J. Alexander*, Solicitors for plaintiff.

*I. N. Steele* for Trustees.

*J. T. Morris, A. G. Brown, James G. Ambler*, for Infants.

PHELPS, J.—

The object of this suit is the cancellation of a deed of trust executed by the plaintiff 9th November, 1876. The case has been twice argued, the first time before Judge Dennis, who declined to entertain it as then presented, for reasons which will appear further on.

The plaintiff is the daughter of the late William H. Graham, and the granddaughter of the late George Brown. Upon her coming of age in March, 1876, she became entitled in her own right to the possession of one-fourteenth of her grandfather's estate under his will, her share with its accumulations then amounting to $357,-920.94. She had also expectations from her grandmother, Mrs. Isabella Brown, her father and other relations, which have been since realized.

The case made by the bill, filed 18th June, 1890, is, that her intended marriage to her present husband, William H. Whitridge, being opposed by her father, her grandmother and the family generally, every effort was made by them to break off the match, and to that end they all combined to compel her to execute a deed of trust of her property, which, should she die without issue, would secure it all to the Brown family and exclude her husband from its administration, and the execution whereof by her they believed would cause the defendant, William H. Whitridge to break off said marriage. The deed she charges was obtained from her by the undue influence of her father and grandmother, at a time and under circumstances when her mind was incapable of exercising any free agency, and was too feeble to resist their influence.

The grantees and trustees named in the deed are the plaintiff's father, the late Wm. H. Graham and Wm. G. Bowdoin. The general scheme of the deed (leaving out of view the powers to devise) is a voluntary settlement of that portion of the grantor's fortune coming to her under her grandfather's will, in trust for the separate use of the grantor for life, remainder to her issue living at her death, remainder in equal moieties, (but unequal estates) to her father and brother with cross remainders, ultimate remainder to the heirs at law and next of kin of her said grandfather. The powers to devise are:

1st. As to $150,000 absolutely.

2d. To prefer and apportion at her pleasure as amongst her "issue."

3rd. To prefer and apportion at her pleasure as amongst the "descendants" of her grandfather. This last power can only be made available in remote contingencies.

Upon the termination of her life estate two main contingencies are provided for, the contingency of her death leaving issue then living and the contingency of her death without issue then living. The first of these contingencies is sub-divided into two; the first supposing the powers to devise to have been exercised, in whole or in part; the second, providing for so much as may not have been so devised. In this way, three principal contingencies are developed, and provision is then made for eight sub-contingencies, or "cases," under each of these three heads; four of these "cases" being applicable to the moiety limited in con-

tingent remainder to her father and four of them to the moiety of her brother. These twenty-four sub-contingencies or "cases" are of course postulated upon the various contingencies of life and death of her successors, and of death with and death without issue, and whether before or after the several events upon which the contingent remainders and cross remainders are limited.

The deed is very elaborate, and on the surface presents an artificial and intricate appearance. So far as concerns her own personal interest, and perhaps as to the interests of her immediate successors, the plaintiff might have been able to understand it without assistance. But it would have been manifestly impossible for her or any one but an expert to follow the ulterior limitations of the deed. This fact is noted in passing, but its importance will be found considerably reduced by circumstances hereafter mentioned. The deed was drawn out into great prolixity, partly from an evident anxiety to avoid collision with the rule against perpetuities. Notwithstanding this, the acute criticism of learned counsel has fastened upon one supposed error, several times repeated.

I. I agree with them that the deed is to be construed as if the rule did not exist, to this extent, that the true construction cannot be varied to avoid the effect of the rule. I also agree with the proposition on the other side, that where an expression is fairly doubtful, equally susceptible of two constructions, that construction is to be preferred which would create a legal, rather than an illegal interest. This principle is especially applicable in cases where the whole context manifestly shows, as in this instrument, that the rule against perpetuities was held in contemplation. (Gray on Perpet. Sec. 633.)

Extracted from its context, (with which however it must be carefully compared) the expression in question reads as follows:

"And if any such issue (issue of the grantor living at her death) shall die under the age of twenty-one years without leaving issue living at the time of his or her death, then as to the entire property, as well original as accruing under this deed of such issue so dying, *in trust for or as the case*

*may be to be conveyed to the issue then surviving* of the said Elizabeth," &c.

The words "in trust for or as the case may be" are elliptical, and in order to complete the meaning something will have to be read into them. That is clear enough, but it is not so clear what the words are that must be supplied. As claimed by counsel for plaintiff, the expression must be understood to read as follows: *"in trust for* (if under age) *or as the case may be* (if over age) *to* be conveyed to," &c. They have shown that by this construction, there is a possibility that the trust might not end for forty or fifty years after the death of Mrs. Whitridge, as to some of her possible remote issue, and there are plausible arguments for this construction, and they have been veryably and forcibly urged. On the other hand, the ellipsis is sought to be filled by reference to the immediately preceding context, so as to make the expression read something like this: "in trust for (if as last aforesaid) or as the case may be" (if otherwise). The immediately preceding context, to which this reference is made, is as follows: "shall be held in trust by said trustees for the benefit of such issue" (issue of the grantor living at her death) "until he or she shall arrive at the age of twenty-one and then to be conveyed to him or her."

By thus referring the trust immediately in question to a trust for those only for whose use a trust had just before been declared, the trust is obviously limited to issue living at the grantor's death, and as to all other issue, (not living at her death) included within the expression "or, as the case may be" no trust had been previously declared, and none is intended to be created by the clause in question. The elliptical expression thus draws upon its immediate antecedent for its filling, and the deed naturally becomes its own interpreter. By it, no estate is attempted to be created beyond a life in being and twenty-one years thereafter.

The same expression is repeated in subsequent paragraphs, and each time is susceptible of a similar construction. The clause criticized does not, in my opinion, violate the rule against remoteness, and even if it did, the striking down of this clause for the benefit

of the issue would not invalidate the previous trust for the benefit of the grantor. "When successive estates are created and the first in order of succession is not void for remoteness, it is good, although the subsequent estates should be void forth at reason."

Goldsborough vs. Martin, 41 Md. 502.

II. The deed reserves to the grantor no power of revocation. and this omission is relied on by the plaintiff, if not to condemn the deed absolutely, at least to raise a presumption against it. There is a class of voluntary settlements to which powers of revocation are appropriate, and another ·class to which they are not. It is not deemed necessary to discuss the numerous cases cited on either side, since it is fairly well settled that each case depends in this regard upon its own facts.

Phillips vs. Mullings, L. R., 7 Ch., App. 244.

Hall vs. Hall, L. R., 8 Ch., App. 430.

Toker vs. Toker, 3 D. J. & S. 487.

A voluntary settlement by an heiress, such as that made by this deed, was not needed at its date, and is not needed now, merely to protect the property against a future husband's debts or marital control. In the then existing and present state of legislation and society, the object of such a settlement manifestly is the protection of the woman herself, protection against the unpleasant necessity of saying no; against the possible disaster of saying yes. Its fundamental object is to promote the happiness of married life by placing a woman's fortune beyond the reach of a husband's solicitations and outside the risk of his business ventures. To put in such a deed a power of revocation would simply be a standing suggestion to a mercenary husband to keep the woman in a continual worry until she executed the revocation. Plainly the insertion of a power of revocation would defeat the main object of such a settlement, and its absence therefrom affords no ground of attack.

III. One of the trustees named in the deed, William H. Graham, the plaintiff's father, died in 1885, and his place was filled by the appointment of the plaintiff's husband. Afterwards, the other trustee, Mr. Bowdoin, retired, at the instance of the plaintiff, and Dr. Moale was appointed in his place, upon the nomination of the plaintiff and her husband. The present trustees are, therefore, the plaintiff's husband and· a friend of his and her selection. Their co-defendants are the plaintiff's infant children and a number of infant descendants of George Brown, ultimate remaindermen under the deed. These infant defendants are represented by counsel assigned by the Court. The trustees are represented ·by their own counsel, their position being somewhat peculiar. When the case first went to the examiner, the plaintiff dictated her testimony from a written paper. This was excepted to for that reason, and also because she was not competent as a witness on her own offer. The Circuit Court (Judge Dennis) the trustees making no defense, declined to go on with the case as thus presented, appointed counsel to represent the infants, and remanded the case to the examiner. *The plaintiff was then called by the trustees,* and in substance reiterated her former testimony. To this exceptions are interposed ·by infants' counsel, because the trustees by whom she was called as a witness are parties opposed to her in name only, as is shown by the following facts : 1. One of the trustees is her husband equally interested with her, or even more interested than she, in setting the deed aside, as his testimony shows. 2. The answers of the trustees, though filed by them in proper person, were in reality prepared by plaintiff's own counsel, as was frankly admitted by her counsel at the former hearing. 3. The appearance of separate counsel for the trustees was entered only after objection was made at the former hearing, to the competency of the plaintiff, as a witness on her own offer, and there would be no objection in calling her as a witness, except to impeach the deed.

These exceptions, I think well taken. If the deed of trust is not the "cause of action" of a suit whose object is its cancellation, what is the cause of action? One of the parties to it is dead, and the plaintiff is not a competent witness upon her own offer. Pairo vs. Vickery, 37 Md. 488. In no truthful sense can the trustees, the husband and the husband's nominee, be styled the plaintiff's "opponents," within the letter and spirit of the evidence act. Code, Art. 35, Sec. 2. They are oppo-

nents only in the sense that their names appear on the opposite side of the docket, and that their fiduciary and representative capacity requires them to be made defendants *ex officio*. In actions at law, not collusive, the positions of plaintiff and defendant are necessarily antagonistic. The more comprehensive rule as to parties in equity, often requires joinder of defendants, whose interests conflict with each other, and may be identical with the interest of the plaintiff. Relief may be given to plaintiffs against co-plaintiffs, and to defendants against co-defendants, as well as to plaintiffs against defendants. (Code, Art. 16, Sec. 161.) In the presence of this rule, the proposition is manifestly unsound that the only test of opposition in a suit in equity, within the meaning of the evidence act (Code, Art. 35, Sec. 2) is opposition of names upon the docket.

In the case cited, the record shows that the plaintiff's husband was made a co-defendant, and yet the expedient of making her a competent witness by having her called by him, was never thought of, although Mr. Pairo would very gladly have allowed himself to be used for that purpose.

37 Md. 488.

Now in this case the real opposition of interest is between the husband and the infant defendants. That appears conclusively, not only from the situation itself, but from two papers filed in the case the answer of Mr. Whitridge, and the plaintiff's petition of 24th July, 1890, expressly stating that his interest is adverse to the interests of the infant defendants.

That parties who have voluntarily accepted the duties and responsibilities of trustees can be permitted by a Court of Equity to utilize their fiduciary positions for their private ends to the full extent of contributing to break up the trust confided to them and destroy the title under which they claim, and that to the prejudice of infant remaindermen c. q. t. is a proposition for which no authority has been cited, and a precedent which this Court finds itself unable to establish.

IV. It is claimed that the deceased father of the plaintiff acquired personal benefits under this deed, a direct pecuniary benefit in the shape of trustee's commissions upon the income, a contingent benefit to the extent of one moiety of the corpus, in the event of the grantor's death without issue and of his surviving her, and a more remote contingent benefit to the extent of the other moiety, in the event of the last named contingency, coupled with that of the death of the brother without issue. That is true, and it is also true that such a transaction between parent and child is *prima facie* voidable upon reasonable application by the latter, and devolves upon the parties claiming under the deed the onus of establishing by proof the fairness of the transaction. Here the trustees, the official representatives of all parties in interest, and the persons upon whom the onus of sustaining the deed devolves, are making no defense, but on the contrary are found actively co-operating in the attack. For reasons already explained this course is natural on their part. None the less, the situation is unprecedented and anamolous. The attitude of the infant defendants has been commented on as that of "mere volunteers," but counsel have not gone so far as to claim that the infants have no rights entitled to respect from the Court. I therefore entirely concur in the propriety of the course already taken by the judge named, in appointing counsel specially charged to represent their interests, contingent and apparently remote as some of those interests are.

The duty assigned to the counsel for the infant defendants is that of sustaining by proof the fairness of a transaction obscured by the lapse of fourteen years and the intervention of successive deaths. Five important deaths have occurred since the transaction, including that of every person, without exception, whose connection with it has been arraigned. These are the plaintiff's father, William H. Graham, her grandmother, Mrs. Isabella Brown, her uncle, George S. Brown, and the confidential business adviser of the plaintiff and her family, David M. Perine. All these deceased persons are charged with conduct in their lifetime, which if it does not exactly amount to conspiracy, in the eye of the criminal law, would if charged against living persons of reputable character, be promptly resented as an unworthy imputation, and which in its mildest form, classifies itself under the equitable doctrine of constructive

fraud. Besides these four, another name is added by the testimony, and that is the name of the late Judge Brown, under whose supervision and counsel as the kinsman and friend of the plaintiff and her family, the deed of trust was actually framed.

In addition to this, we have the important fact, admitted in the bill, that shortly after her marriage, which took place soon after the execution of the deed, and while all these parties were living, and the circumstances fresh and the entire evidence available, the deed of trust now impeached was laid before counsel by her husband at her request *"together with the circumstances under which it was procured to be executed by your oratrix."* and his opinion requested as to the validity thereof, whereupon her husband "was informed by said counsel that said deed could not be successfully impeached." To this opinion she says that she and her husband "felt obliged to submit," but gives no reasons why they should so feel, and no explanation why the same freedom of volition and action which led her and her husband to take the advice of one lawyer, did not lead them to check off that advice, if unsatisfactory, by taking, in a matter of $350,000, the opinion of other lawyers, equally competent. In point of fact, however, the confirmatory advice of other counsel was afterwards obtained. The bill goes on to state that after her father had become better acquainted with his son-in-law, her father "repeatedly expressed to your oratrix his deep self-reproach and repentance for the part he had taken in forcing her to sign said alleged" deed, "implored her forgiveness for the injury he had done her," "expressed his desire to make reparation to the utmost, and consulted counsel to procure the said deed to be set aside, if he could accomplish it. Accordingly, he sent for his counsel and laid said deed before him but was advised by said counsel that it was valid, and could not be set aside in a court of justice."

It is to be presumed that the late Mr. Graham, in the state of mind and feeling towards his daughter and the transaction thus vividly portrayed, did not mislead his counsel and betray his daughter by suppressing the material facts within his personal knowledge, and a part of which he was.

Thus we have it, that on two different occasions, after the deed was made, the plaintiff had the benefit of professional advice; *independent*, because wholly outside the sphere of undue influence alleged; *competent*, because otherwise it would not have been invoked beforehand, nor acquiesced in afterwards; and *with full knowledge of all the facts*, because the bill so states expressly as to one, and by necessary implication as to the other.

If the deed had originally been executed after such independent counsel, the case would have met the requirements of the strictest rule which has ever been applied anywhere, by any authority, to gifts or purchases between principal and agent. We know of no rule which prevents a Court of equity from construing the act of the party (after full knowledge of the character and effect of the paper executed and competent and independent advice) by which all claim to have it set aside is abandoned into a reaffirmance of the paper."

Kerby vs. Kerby, 57 Md. 356-7.

The difference between the two cases is, that in the case cited the abandonment of a suit actually commenced, was an act of reaffirmance or confirmation, while here, there is the abandonment of the intention but not of the disposition to commence a suit, equivalent to a *confession* with full knowledge of rights, that the plaintiff had no case on the facts. Such a confession made shortly after the event, and under professional advice, while not a confirmation, nor an estoppel, is *evidence* far more persuasive than any testimony of hers now could be, even if admissible, and its probative force is augmented to a degree of conclusiveness by the lapse of time and intervening deaths of all important witnesses.

It will be further observed that in the case cited the Court carefully distinguishes this defence from the ordinary defence of laches, and adverts to the facts mentioned "as elements to be considered in making up judgment upon the main point." 57 Md. 357.

Those facts, so far as essential, are present and active elements in this case, and besides them, there are others, not present in the case cited.

V. It appears from the bill that the late David M. Perine (well known as a register of wills for many years) had drawn the will of George Brown, the plaintiff's grandfather, and from the will itself, that he was the first named trustee under it. The plaintiff also alleges in her bill that said Perine was known to her as the confidential lawyer and an old friend of the Brown family, and was employed by them to draw the deed in question.

Amongst the papers left by Mr. Perine two letters from the plaintiff were found by his executor, and they are filed as exhibits. These letters were written shortly before the deed was executed. In them she acknowledges the interest always taken by Mr. Perine in herself and brother, hopes he will "continue to arrange it," meaning the deed of settlement, gives instructions as to several details, and especially as to the contingent provision for her father, which she insists upon being enlarged. These letters are not mentioned in her bill. They are not charged to have been extorted from her. If they stood alone, it might be said that the same presumption against the deed also operated against them, that is, they would also be presumed the result of the paternal authority. Read, however, in the light of the attempts subsequently made to invalidate the deed, and the repeated advice of counsel, *in possession of all the facts*, upon which the attempt was abandoned, these letters are significant. They are scarcely consistent with the charge in the bill, of Perine's duplicity, that "while professing to be giving her legal advice he was in the whole transaction the family lawyer and not hers, and acted therein for her grandfather's heirs and not for her benefit." Taken in connection with the circumstances above mentioned, the production of these letters fills up the measure of proof required to the entire satisfaction of this court. I will even go so far as to say, that upon the authority of 57 Md. 345, above cited, the defence would have been complete without their production.

VI. A portion of the testimony of Frederick J. Brown, Esq., the draftsman of the deed, has been excepted to by plaintiff's counsel as hearsay, and the exception is well taken. But enough of it remains, in connection with the averments of the bill, to show that his father, the late Judge Brown, was called in by Mr. Perine to give his counsel in the matter of the deed, and that Judge Brown acted, not of course professionally, but as the kinsman and friend, not only of the family but of the young lady herself, watchful of her interests, as is shown by the increase, at his instance, of the amount to be left at her absolute testamentary disposition. Seeing the plaintiff supported upon the one side and upon the other by two such friends and advisers as David M. Perine and George Wm. Brown, it is not surprising that the counsel to whom the whole case while fresh was submitted for an opinion, should have taken the view that this young lady acted not improvidently, nor involuntarily, nor unadvisedly, but with such surroundings as in her circumstances amounted substantially to independent competent advice, even before the execution of the deed. They were the two men to whom of all others it was natural that she should have gone, had she been seeking important business advice. If a transaction of so much importance had been consummated without their knowledge no matter under whose advice, or how obtained, that circumstance alone would have thrown a degree of suspicion around it, greater or less, according as it combined with or was neutralized by the other circumstances surrounding the transaction. Naturally, the first question to be asked would be, why did she not have the counsel of Judge Brown and Mr. Perine, the one her kinsman, the other her friend, and both of them, so to speak, hereditary counsellors.

VII. Add to this, that it is well known to those of counsel and is indeed frankly admitted in the bill, that the full extent of the contingent provision for the father's benefit was the result, not of his pressure, but of her own free will and persistent determination, and it seems too much to ask a court, at this late day, after time and death have done their work, to set at naught the conclusions of the plaintiff's and her husband's counsel, and the independently concurring opinion of her father's counsel, founded upon data in the one case furnished from her own standpoint; in the other volunteered from the opposite standpoint

in her own interest; and both combined far more complete and satisfactory than any data now attainable.

It is especially noticeable that from the nature of the case there can be no new discovery as to any matter of evidence, and none in fact is claimed.

VIII. It has been already stated that besides the fortune left her by her grandfather, the plaintiff at the date of the deed had expectations from other relatives, which have since matured. Her father and her grandmother died in 1885, leaving her large legacies. From her father she received considerably over $100,000, and from her grandmother, Mrs. Isabella Brown, $25,000. Would these legacies have been left to her absolutely, in her own right, had the testators not made their wills under the fixed assurance that she had finally acquiesced in the settlement of the bulk of her fortune in trust? Would these legacies have been left to her at all, if, during their lifetime, the plaintiff had ventured to spread upon the public records the charges which constitute the gravamen of the pending bill? Can an expectant hold back a grievance against a wealthy relative until after testamentary expectations have been realized, and then come forward and realize also upon the grievance?

But it is unnecessary to press home the delicate investigation suggested by these inquiries. Sufficient ground has already appeared for dismissing the bill and a decree will be passed to that effect.