LIZZIE E. CARSON and HAZELTINE G. VICKERY, Surviving Administrators of THOMAS J. CARSON, SAMUEL HEFFLEBOWER and others, *vs.* CHARLES E. PHELPS, Trustee, MARY ANN EDES, ELIZABETH W. LONG, and others.

*Deed not Voluntary—Creation of a Trustee—Equitable Lien of unrecorded deed preferred to prior Creditors—Delivery, where Grantor and Grantee the same person, acting as Trustee—Declaration of Trust—Want of Revenue Stamp on a Deed: how supplied; and when not material—Art. 24, sec. 29 of the Code—Art. 24, secs. 19 and 21 of the Code—Mortgage of several lots; Effect as to Subsequent Incumbrancers, of a Release, upon Sale of part of the Mortgaged property—Laches—Counsel Fees.*

A deed executed by a trustee to himself to secure his *cestuis que trust*, whom it is his legal and moral duty to secure, is not voluntary, but founded upon a valuable consideration.

The owner of property, without any transmutation of possession may convert himself into a trustee of it by a proper declaration of trust.

A trust valid and binding as against the party and his representatives, will be enforced in equity against his general creditors, whether the trust be

Carson & Vickery, Admrs. of Carson, *et al. vs.* Phelps, Trustee, *et al.*

expressly created by deed unrecorded, or whether it arises from a valid contract in writing for a specific security.

No particular form is necessary to effect delivery. It may be by words or acts, or by both combined, but in all cases the intention to deliver must exist, and acceptance may be presumed from the grantee's possession.

If a trustee act ambiguously, he cannot afterwards take advantage of the doubt and claim to have acted in some other character.

In the case of several capacities in the same person, the law will attach the possession to the character in which of right the subject ought to be held.

So soon as an express declaration of trust intended to be final and binding upon the settlor, has been executed, the trust is perfectly created and will be enforced.

C. executor and trustee under a will, having by an order of the Orphans' Court obtained possession as trustee of the fund in his hands as executor, afterwards executed to himself as trustee a deed of seven lots in trust to sell for the use of the beneficiaries under the will, reciting a previous request by them and an express promise by him for security. No equity of redemption remained in the grantor, but there was a resulting trust in his favor as to the surplus proceeds of sale. The deed was prepared by his attorney at his instance, and was duly attested and acknowleged, but not stamped or recorded, he believing himself to be solvent, and was retained in his own possession until his death, insolvent; after which the land was sold under a decree in a creditors' suit. In the contest as to the distribution, the *cestuis que trust* claiming a specific lien and priority over the general creditors of C. existing at the date of the deed, it was HELD:

1st. That the want of a stamp was properly supplied by affixing one to the instrument after the death of C. and by payment to the collector of the penalty prescribed by Act of Congress.

2nd. That the absence of the stamp did not make the instrument invalid, or render it inadmissible in evidence, in the absence of proof that the stamp was omitted with intent to defraud the revenue.

3d. That the instrument not being a mortgage technically, but a deed of trust, no affidavit of consideration was requisite to its validity.

4th. That the deed was perfected by delivery and operated to create a valid trust in favor of the beneficiaries.

5th. That the possession of C. was not equivocal, the deed after acknowledgment being held by him in his character of trustee, and no longer under his moral or lawful control as an individual; and his intention being

Carson & Vickery, Admrs. of Carson, *et al. vs.* Phelps, Trustee, *et al.*

manifest both from the instrument itself and the circumstances attending the transaction, that the deed should operate as a declaration of trust.

Article 24, sections 19 and 21 of the Code, cannot be construed as impairing the rights of parties claiming under a trust, or as affecting equitable liens.

The seven lots conveyed in trust were encumbered by a previous mortgage executed by C. which contained a convenant providing for its payment by voluntary sales of the property mortgaged. Five of the seven lots were afterwards sold by C. and the mortgage released. HELD :

1st. That the two remaining lots were thus left unencumbered, subject to the equitable rights of the *cestuis que trust* under the deed, and could not be subjected by a marshalling of the fund, to the payment of a proportional part of the original mortgage debt.

2nd. That the lien and priority of the *cestuis que trust* under the deed could not be impaired by the payment of the mortgage by C. or by the breach of trust committed by him in selling a portion of the property.

The deed of trust did not come into the possession of the *cestuis que trust* until a year after the death of C; shortly after which they filed it with their petition in the creditors' suit. One of the parties was extremely aged and infirm; two were absent from the country, and the other was a *féme covert*, who had previously assigned her interest to C. by conveyances which were after his death judicially cancelled. HELD :

That the *cestuis que trust* were not chargeable with laches.

Counsel for the administrators were allowed fees out of the personal estate for unsuccessful professional services in endeavoring to defeat an important claim of one of the creditors against the estate. On appeal by that creditor and others from the order of allowance, because passed *ex parte* and without notice, and because the creditors objecting had not authorized, nor derived benefit from, the services, it was HELD :

That it was the duty of the administrators to employ counsel in the suit, and the proof showing that the amount allowed was a reasonable compensation for the services rendered, the estate was properly charged with their fees.

CROSS APPEALS from the Circuit Court of Baltimore City.

Thomas J. Carson was the executor and trustee under the will of Samuel C. Edes, of which the equitable appellees were the beneficiaries. The trusts of the will are fully set forth in *Pairo vs. Carson's Admrs.*, 37 *Md.*, 467, 484. On the 8th of May, 1867, Carson passed his second

and final account as executor, showing a balance in his hands due the estate, of $21,395.20. This balance he was allowed to transfer to himself as trustee under the will, by virtue of an order of the Orphans' Court, recited in the following instrument, acknowledged and executed by him:

This Indenture, made this 27th day of April, A. D., 1868, between Thomas J. Carson, of the City of Baltimore, and State of Maryland, of the one part, and Thomas J. Carson, trustee, as hereinafter named, of the second part: Witnesseth, whereas on the 8th day of May, 1867, at an Orphans' Court held for Baltimore City, in the Court House in the City of Baltimore, among other proceedings, were the following, viz:

"In Baltimore City Orphans' Court:

"On application of Thomas J. Carson, executor of Samuel C. Edes, deceased, it is, this 8th day of May, 1867, ordered by the Court, that the said executor be, and he is hereby authorized and directed to transfer to himself, as trustee under the last will and testament of said deceased, to be held by him, as trustee, subject to certain trusts in said will conferred, the following stocks and cash, viz: 100 shares Wisconsin Copper Mining and Smelting Company, and cash, twenty-one thousand three hundred and ninety-five dollars and twenty cents."

And whereas, the distributees and parties in interest under said will have requested that the money in the hands of said trustee, may be secured to him by bond or mortgage, or other security.

And whereas, the said trustee, hath agreed to secure the same. Now, in pursuance of said request, and for the purposes aforesaid, the said Thomas J. Carson, doth hereby grant and assign, transfer and make over to the said Thomas J. Carson, trustee, all his right, title, interest and estate, both at law and in equity, in and to all those several pieces or parcels of ground and premises, situated

and lying in the City of Baltimore, and particularly described in a conveyance from the said Thomas J. Carson to Joseph L. Brent, trustee, dated the 25th day of May, 1867, and recorded among the Land Records of Baltimore City, in Liber A. M., No. 338, folio 222, &c. To have and to hold the same unto the said Thomas J. Carson, trustee, as aforesaid. In trust and confidence, nevertheless, that the said Thomas J. Carson, trustee, as aforesaid, shall take and receive all the rents, income and profits derived therefrom, and appropriate the same to the payment of the annual amount due and owing to the said Mary Ann Edes, during the term of her natural life, as provided for under the will of the said Samuel C. Edes; and if the said income derived from said property, shall not be sufficient for that purpose, then with power to the said trustee, to sell and dispose of absolutely, without the intervention or authority of any Court of Law or Equity, any part or parcel or all of said property; provided, that the said Mary Ann Edes, shall first make request in writing of the said trustee, to make said sale, and shall join in the execution of the deed of conveyance from said trustee, for the purposes aforesaid, and give good and sufficient conveyances for the same, without the purchasers being in any way bound to see to the application of the purchase money. And, in further trust, after the death of the said Mary Ann Edes, the said trustee, shall have full power and authority to sell and convey as aforesaid, all of said property absolutely, and make distribution of the proceeds thereof to the several parties in interest, according to the terms of the said will and their rights and claims in the premises, and after the payment of the parties aforesaid, the balance, if any, shall be transferred and paid over to the said Thomas J. Carson, the grantor, hereinbefore mentioned.

Upon the margin of the foregoing, appeared the following :

Int. Revenue Stamp to amount of 5c. affixed to this instrument and cancelled by me, this 11th day of July, 1870; penalty fifty dollars, ($50.00,) paid.

R. M. SMITH,

*Collector, 3rd District, Md.*

(R. M. Smith, Collector of Internal Revenue, 3rd District, Maryland.

(U. S. 5 cents Stamp.)

The conveyance recited, was a mortgage of seven described lots to Joseph L. Brent, trustee, to secure notes to the amount of $32,726.51, afterwards assigned to Johns Hopkins. In this mortgage, there was a special covenant contemplating its payment by voluntary sales of the property mortgaged. Five of the seven lots were afterwards sold, the notes paid, and the mortgage released, 9th of October, 1868.

Carson died insolvent on the 11th of May, 1869; the only real estate of which he died seized being the two remaining lots, in controversy. On the 15th of December, 1869, a creditors' bill was filed by the appellant, Hefflebower for a sale of the same real estate, and a few days after the return of the appellee, Mrs. Long, from a year's absence in Europe, (May 1870,) she took out letters of administration, *d. b. n. c. t. a.* on the estate of Samuel C. Edes, by virtue of which she received from the administrators of Carson, the papers left by Carson relating to the Edes' estate, among which she found the instrument in question, uncancelled, and on the 15th July, 1870, a petition was filed in the creditors' suit in her name and in the names of the other equitable appellees, claiming a specific lien upon the real estate mentioned, and beyond the extent of their said lien, claiming their dividend from the personal assets as general creditors. With this petition were filed the unrecorded deed and other documents referred to, the former having been first stamped by the United States Collector.

Carson & Vickery, Admrs. of Carson, *et al. vs.* Phelps, Trustee, *et al.*

Collateral proceedings pending at the same time, resulted in the appointment of the appellee, Charles E. Phelps, as trustee in the place of Carson, and in his being made, as such, a party complainant in the creditors' suit. To the petition of the appellees, Hefflebower, the complainant, applied for and obtained leave to be made a party defendant, and put in his answer denying the preference claimed, and setting up the defence of laches. An answer was also filed in behalf of the administrators and heirs of Carson, and the other creditors. Under commission the claim of the appellees, and the execution and acknowledgment of the paper in controversy, by Carson, under the advice of counsel, were proved, and testimony was produced to sustain the allegations of the petition, anticipating the defence of laches. No proof was offered on the part of those resisting the claim of lien.

The auditor's report showed an aggregate of claims of $86,785.79, the greater portion of which accrued prior to the date of the deed; the largest claim being that of the estate of Edes, amounting to $22,838,53.

Net proceeds of personalty, . . . $9,856.48.
Reserved by agreement, . . . 1,500.00.

$8,356.48.

Net proceeds of realty sold under the decree, all equities being reserved by agreement, $12,083.74. The auditor's account A, which distributed the proceeds of the personalty in the hands of the administrators *pro rata,* was ratified by agreement, and the money distributed accordingly, subject only to an equitable abatement as to the dividend audited the appellees, in case their claim to a preference upon the proceeds of the realty should be sustained.

Account B distributed the proceeds of the *realty* in the hands of Randolph Barton, trustee, *pro rata.*

This is the account called for by the instructions of the *appellants*, and contested by the appellees.

Accounts C and D were called for by the appellees, and contested by the appellants.

Account C distributed to the subsequent creditors their *pro rata* shares of the real estate, the same in amount as their dividends under account B,' and excluding all prior creditors, audited the balance to the representatives of Edes.

Account D, distributed the *personal* estate among all the creditors *pro rata*, auditing to the *subsequent* creditors the same dividends as per account A, but allowing the *prior* creditors (upon the theory of their being excluded from the realty,) a dividend based upon their whole claims, while it abated in the same proportion from the claim of the appellees preferred in account C. The object of this account was to so marshal the assets as to determine the amount to be refunded by the appellees, (under agreement) out of the dividend received by them under account A, in case their claim to a preference should be established against the realty.

The Court below (PINKNEY J.) held that the instrument executed by Carson on the 27th of April, 1868, although it could have no effect or operation as a deed, for want of delivery, the grantor and grantee being the same person, and the possession therefore being equivocal, yet "manifested with sufficient certainty, an agreement on the part of Carson to convey the property mentioned in the instrument to his *cestuis qui trust*, or to himself as trustee, as a security for the payment of his indebtedness to them, to enable a Court of Equity to enforce it." To the objection of laches the Court said "from the character and circumstances of this case, I do not see any just reason to charge the petitioners with laches, with having slept upon their rights. Let it be remembered that Carson was their trustee; that the instrument, which constituted the evi-

dence of his promise to his *cestuis que trust*, was in his possession until his death in May 1869, when it went into the possession of his administrators. Mrs. Long did not get possession of it till after she was appointed administratrix *d. b. n.*, in May 1870. The claim was filed on the 15th of July following. Then consider the extreme age of one of the distributees, the absence abroad of two others, the disability by coverture and otherwise of Mrs. Pairo, I think these circumstances account for and excuse the delay. Under all the circumstances of the case, I cannot perceive that there has been such delay as will prevent the petitioners from asserting their claim in this case against the general creditors of Carson, who, the authorities show, are bound by the equity agaist him.''

"The exceptions to Accounts 'C' and 'D' will consequently be overruled, and these Accounts will be ratified, and Account 'B' rejected.''

From the order ratifying the auditor's accounts, this appeal was taken in behalf of the creditors and administrators of Carson. A cross appeal was taken from an order allowing $500, as fees to counsel for services rendered in the Court of Appeals, to the appellees in the case of *Mary J. Pairo, &c. vs. Carson's Admrs.*, 37 *Md.*, 467.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ROBINSON, J.

*Randolph Barton* and *Samuel Snowden*, for the appellants.

The paper purporting to be a deed from Thomas J. Carson to Thomas J. Carson, trustee, having been retained in his possession during his lifetime, was never delivered by him, and never became operative as a conveyance or a contract for a conveyance. Delivery was essential to make it operative, and nothing could make his retention of the deed in his own possession a delivery, but his intention to

do so clearly shown. *Byers vs. Mc Clanahan,* 6 *G. & J.,* 250, (256) ; *Stewart vs. Redditt,* 3 *Md.,* 67, 79 ; *Carey vs. Dennis,* 13 *Md.,* 1, 18 ; *Owens vs. Miller & Mayhew, et al.,* 29 *Md.,* 144 ; *Leppoc vs. Nat. Union Bank,* 32 *Md.,* 136, 144 ; *Maynard vs. Maynard,* 10 *Mass.,* 456 ; 2 *Rob. Prac.,* 10, 11 ; *Kirk vs. Turner,* 1 *Dev. Eq.,* 14 ; *Van Valen vs. Schemerhorn,* 22 *How. Pr.,* 416 ; *Fisher vs. Hall,* 41 *N. Y.,* 421 ; 2 *Phil. Ev.,* 553, *N.* 492 ; *Parmelee vs. Simpson,* 5 *Wall.,* 81 ; *Burton vs. Boyd,* 7 *Kans.,* 17 ; *Ward vs. Ward,* 2 *Haywood,* 226 ; *Hatch vs. Haskins,* 5 *Shepley,* 391, (17 *Maine*) ; *Commercial Bank vs. Reckless,* 1 *Halsted's Ch.,* 430.

It was only an inchoate instrument which never passed any interest to the grantee. *Howard vs. Carpenter,* 11 *Md.,* 259, 277. And even if he ever had any intention that the paper should operate as a deed, the conveyance by him during his lifetime of five out of the seven pieces of property therein described, is evidence of the most conclusive character, of his intention not to deliver the deed. *Scott vs. Porcher,* 3 *Mer.,* 652 ; *Garrard vs. Lauderdale,* 2 *Russ. & M.,* 45 ; *Uniacke vs. Giles,* 2 *Molloy,* 257.

His conduct in reference to the paper shows that he had no intention to deliver it, but considered it as completely under his control. If he had designed to deliver the paper he would have perfected it by putting the requisite stamp upon it and having it recorded—neither of which he ever did.

But if it should be held that the paper was delivered at the time of its execution, it must take effect as a deed, and as such is only operative from the time of its recording against the claims of creditors existing prior to its date, and can only be enforced as a contract, subject to the claim of such Creditors. *Code, Art.* 24, *secs.* 19, 21 ; *Act of* 1831, *ch.* 304; *Albert and Wife vs. Winn and Ross, et al.,* 5 *Md.,* 77.

The instrument of writing not being valid as a deed, or even as a memorandum in writing under the Statute, for

Carson & Vickery, Admrs. of Carson, *et al.* *vs.* Phelps, Trustee, *et al.*

want of delivery, was inoperative to pass any title or to lay the foundation for a bill in equity, or as evidence of any contract. *Parker vs. Parker,* 1 *Gray,* 409 ; *Merriam vs. Leonard,* 6 *Cush.,* 151 ; *Stone vs. King,* 7 *R. J.,* 358 ; *Overman vs. Kerr,* 17 *Iowa,* 485 ; *Howard vs. Carpenter,* 11 *Md.,* 259 ; *Winn and Ross vs. Albert,* 2 *Md. Ch. Dec.,* 169 ; *Wingate vs. Dail,* 2 *H. & J.,* 76 ; *Grant vs. Levan,* 4 *Barr,* 393, 423 ; *Johnson vs. Brooks,* 31 *Miss.,* 17 ; *Sanborn vs. Sanborn,* 7 *Gray,* 142 ; *Nice's Appeal,* 54 *Penn.,* 200.

The instrument of writing in this case was never delivered, and never, therefore, became an operative contract binding upon Carson, who was the party to be charged, and is, therefore, no evidence of the existence of any such contract, and being no such memorandum in writing as is required by the Statute, and there being no other proof of any contract to execute a deed of trust or mortgage to secure the indebtedness to the estate of Edes, which must be in writing, and cannot be proved by any act *in pais.* *Polk vs. Reynolds,* 31 *Md.,* 112 ; *Peter vs. Schley's lessee,* 3 *H. & J.,* 211 ; *Clabaugh vs. Byerly,* 7 *Gill,* 354 ; *Hays vs. Richardson,* 1 *G. & J.,* 366 ; *Anderson vs. Critcher,* 11 *G. & J.,* 450.

There is no proof of any contract in this case which can be enforced in a Court of Equity. To give the effect to the recital in the paper writing in this case, which paper is utterly inoperative and void in itself as proof of a precedent parol agreement to execute a deed of trust, would be indeed grasping at a slight circumstance to take the case out of the Statute, which the Court is never anxious to do. *Shepherd vs. Bevin, et al.,* 9 *Gill,* 34, 43. And in violation of the settled practice of Courts of Equity which do not seek to establish priorities among creditors, but when they have a fund in their control will so administer it as to give an equal proportion to each creditor, unless there exists in favor of any creditor an equitable lien upon the

fund. *Cross vs. Cohen*, 3 *Gill*, 267; *Gibson vs. Finley*, 4 *Md. Ch. Dec.*, 75.

Nor do they enforce as a contract, that which is in form and substance an imperfect and abortive conveyance, against the legal rights of the general creditors, in favor of a creditor whose claim rests upon no stronger equity than theirs. *Anderson vs. Tydings*, 8 *Md.*, 441; *Albert and Wife vs. Winn, &c.*, 5 *Md.*, 66, 77.

In this case the Court is not asked to give priority to an already acquired and perfected legal or equitable lien upon the fund, but to perfect an incomplete and therefore void instrument, so as to give the appellees a lien upon the fund, and then to enforce that lien. In other words that as Carson never made any contract with the appellees or any of them during his lifetime, to secure the indebtedness to Edes' estate by a deed of trust or mortgage, now that he is dead the Court should make such a contract and enforce it against the general creditors of Carson.

But even if the instrument of writing had been delivered, yet being in the nature of a mortgage in trust, and not having the affidavit required by law, it is not valid at law, and will not be held good in equity as a contract. *Art.* 24, *sec.* 29 *of the Code; Cockey vs. Milne's Lessee*, 16 *Md.*, 200; *Fouke vs. Fleming & Douglas*, 13 *Md.*, 392; *Wilson vs. Russell*, 13 *Md.*, 498, 524; *Nelson vs. Hagerstown Bank, et al.*, 27 *Md.*, 73; *McGegan vs. Stall*, 3 *Stew. & Por.*, 397.

The case of *Charles vs. Clagett*, 3 *Md.*, 82, was affirmed by a divided Court, which renders the case of no authority. *Groverman vs. Spencer*, 7 *Md.*, 214. As the instrument set up in this case is similar to the one in 3 *Md.*, 82, and the reasoning of MASON, J., is so very clear and conclusive upon the point, his opinion and the authorities cited by him, are referred to as showing beyond question that the Legislature, in passing the Act of 1846, ch. 271, (An Act to prevent frauds in mortgages and bills of sale,) intended

any instrument made to secure a debt. One of the principal arguments made by Mr. Justice ECCLESTON is, that all the *cestuis que trust* would be compelled to take the oath, (p. 87,) but this objection is disposed of by the case of *Hays vs. Dorsey,* 5 *Md.,* 99; for if the mortgagee in trust is the proper party to make the affidavit required by the Act of 1833, then he is the proper person to make the affidavit to the mortgage. The instrument set up in this case being therefore by the very terms of the Act of Assembly void, a Court of Equity will not enforce it against the creditors of Carson. *Speldt vs. Lechmere,* 13 *Ves.,* 588; *Ex parte Yallop,* 15 *Ves.,* 60; *Ex parte Wright,* 1 *Rob.,* 308.

Even if the recital in the paper should be considered as a sufficient memorandum in writing to take the case out of the Statute, yet the agreement as recited is too vague and uncertain to be enforced. *Nelson vs. Hagerstown Bank, et al.,* 27 *Md.,* 51; *Sanderson vs. Stockdale,* 11 *Md.,* 563; *Rider & Trotter vs. Gray, et al.,* 10 *Md.,* 282; *Griffith vs. Frederick Co. Bank,* 6 *G. & J.,* 439; *Perkins vs. Wright,* 3 *H. & McH.,* 326; *Colson vs. Thompson,* 2 *Wheat.,* 341.

The recital does not contain any of the particulars of the alleged agreement—there is no property described in it, nor is there any certainty as to what manner the security should be given, or for what length of time.

Even if the Court should be of opinion that there is a clear and explicit contract to give a security upon the property described in the alleged deed of trust, it is at most a contract to convey, subject to the mortgage to Brent, in other words, to convey the equity of redemption in the property therein described. Therefore the fund in Court being the proceeds of two pieces of property out of the seven covered by the mortgage and the contract, ought to pay for the benefit of the general creditors, its proportional part of the mortgage debt, which was paid by Carson in his lifetime, after the contract was entered into.

In other words, the appellees would be entitled, under their alleged contract, to the value of the two pieces of property subject to their proportional part of the mortgage debt under the Brent mortgage.

The *cestuis que trust* represented by the appellees having failed during the lifetime of Carson to ask him to secure the payment of the claim of the Edes' estate, have lost the right to ask any priority over the general creditors of Carson. The law is well settled that laches depend upon the circumstances of each particular case, and where the circumstances of the case are such that the Court can see, that by reason of the failure of the parties seeking a priority, to ask for the security, or to enforce their claim, other parties will be injured by the enforcement of a claim, the Court will refuse to do so.

In this case the money was received by Carson as trustee, under the will of Edes, and any one interested in the fund had a right to file a petition in a Court of Equity, and compel him to give bond, with security, for the faithful performance of his trust. No one interested themselves in the matter, but seem to have trusted entirely to the personal responsibility of Carson, and relying upon that, they let slip the opportunity which they had of having this claim secured in Carson's lifetime, and they are now trying to get a priority over the general creditors of Carson.

The case of *Pairo vs. Vickery* having been decided by the Court below in favor of the estate of Carson, the administrators were bound to employ counsel to try the case in this Court,—and having so employed the counsel, the fee was properly allowed by the Court below out of the fund in the hands of the administrator. *Compton vs. Barnes,* 4 *Gill,* 55; *Insolvent Estate of Leiman,* 32 *Md.,* 225.

*Charles E. Phelps,* for the appellees.

I. The unrecorded deed of 27th April, 1868, being an authentic manifestation of a trust, as well as the written

evidence of a valid contract for a specific security, is binding in equity upon Carson and his representatives.

II. This equity is enforcible as against general creditors existing at the time of its creation, even although they had subsequently obtained judgments.

III. And *a fortiori* as against prior simple contract creditors. These propositions are abundantly sustained by the whole body of Maryland adjudication, upon the principle that "*Equity regards that as done which was agreed, or which ought to be done.*" And that *non obstante* all registration enactments.

The cases may be classified as follows:

I. Where the general doctrine was conceded, but its application to the particular case denied.

For want of *writing* under the Statute of Frauds. *Winn & Ross vs. Albert & Wife,* 2 *Md. Ch. Dec.,* 169, *affirmed in* 5 *Md.,* 66; *Moale vs. Buchanan,* 11 *G. & J.,* 314; (*As to the judgment of the Marine Bank,* 326;) *Clabaugh vs. Byerly,* 7 *Gill,* 354. For want of *certainty. Stoddert vs. Bowie,* 5 *Md.,* 18; *Bowie vs. Stonestreet,* 6 *Md.,* 430; *Sanderson vs. Stockdale,* 11 *Md.,* 563; *Thomas vs. Farmers' Bank of Md.,* 32 *Md.,* 69. For want of jurisdiction in State Court. *Wilson vs. Turpin,* 5 *Gill,* 59. Where the unrecorded mortgage was afterwards surrendered and cancelled by agreement, and no distinct proof of its terms from the written correspondence, and because attempted to be enforced against *bona fide* purchasers without notice. *Gill vs. McAttee,* 2 *Md. Ch. Dec.,* 255. Because of a lucky *mistake of law* in one of those questionable family arrangements to victimize creditors that Courts are not solicitous to aid. *Anderson, et al. vs. Tydings, et al.,* 8 *Md.,* 427. Compare *Baynard vs. Norris,* 5 *Gill,* 468, and *Nelson vs. Hagerstown Bank,* 27 *Md.,* 71. Because application not made in due time, and would prejudice and wholly exclude *subsequent creditors. Nelson vs. Hagerstown Bank,* 27 *Md.,* 57, 75, 76.

Carson & Vickery, Admrs. of Carson, *et al. vs.* Phelps, Trustee, *et al.*

II. Where the equitable lien was recognized and enforced over the registry laws. As against contracting parties. *Tiernan vs. Poor & Wife,* 1 *G. & J.,* 216 ; *Brundige vs. Poor & Wife,* 2 *G. & J.,* 1 ; *Triebert vs. Burgess,* 11 *Md.,* 452. As against their representatives. *Woods Admr. vs. Fulton,* 4 *H. & J,* 329 ; *Aldridge & Higdon vs. Weems & Hall,* 2 *G. & J.,* 36 ; *Sullivan vs. Tuck, Exr.,* 1 *Md. Ch. Dec.,* 59. As against general and judgment creditors. *Spalding vs. Brent,* 3 *Md. Ch. Dec.,* 417-418, *approved* 32 *Md.,* 69. As against subsequent mortgage creditors of purchasers with notice. *Actual—McMechen vs. Maggs,* 4 *H. & J.,* 132 ; *Hudson vs. Warner,* 2 *H. & G.,* 415. *Constructive—Baynard vs. Norris,* 5 *Gill,* 468 ; *Price & Bevans vs. McDonald,* 1 *Md.,* 422. As against subsequent judgment creditors with notice. *Johnson vs. Canby,* 29 *Md.,* 211. As against subsequent judgment creditors without notice. *Hampson vs. Edelen,* 2 *H. & J.,* 64 ; *Moale vs. Buchanan,* 11 *G. & J.,* 314 ; (*As to Didier's judgment,* 326.) As against subsequent creditors without *actual* notice. *Repp, et al. vs. Repp, et al.,* 12 *G. & J.,* 341 ; *Baynard vs. Norris,* 5 *Gill,* 468. As against prior creditors. *Alexander vs. Ghiselin,* 5 *Gill,* 138.

Where there were creditors, both prior and subsequent, discriminating between the two classes so as to exclude prior creditors in favor of the lien, and allowing subsequent creditors their just *pro rata* estimated upon the aggregate of all the claims. *Pannell & Smith vs. Farmers' Bank,* 7 *H. & J.,* 202.

In the present case, account C is based upon the principle laid down by the Chancellor in *Pannell vs. Farmers' Bank,* which has stood unshaken for nearly half a century. *Alex. Br. Stat.,* 419.

The dividend allowed the subsequent creditors by account C, is precisely the dividend audited them by their own account B. Consequently the enforcement of the lien in this case will not operate "to the prejudice of sub-

Carson & Vickery, Admrs. of Carson, *et al. vs.* Phelps, Trustee, *et al.*

sequent creditors, for whose benefit the registry laws were enacted." *Nelson vs. Hagerstown Bank*, 27 *Md.*, 73. And if relief cannot be administered in the precise mode stipulated for in the instrument, the property being sold with a reservation of equities, chancery will still grant relief by giving a preference upon the proceeds. *Thomas' Admrs. vs. Vonkapff's Excrs.*, 6 *G. & J.*, 372; *Alexander vs. Ghiselin*, 5 *Gill*, 184, *top. See also as to creditors. Whitworth vs. Gaugain*, 3 *Hare*, 416, affirmed by Ld. Chan. LYNDHURST, in 1 *Phil. Chan.*, 728, approved emphatically by Ld. Chan. SUGDEN, in *Abbott vs. Stratton*, 9 *Ir. Eq.*, 233, and re-affirmed in *Eyre vs. McDowell*, 9 *Ho. Lds.*, 642.

As to whether there was a delivery of the deed? As a memorandum of a trust or contract, technical delivery is not essential. *Maccubbin vs. Cromwell*, 7 *G. & J.*, 163-4; *Aldridge vs. Weems*, 2 *G. & J.*, 47; *Re Way's Trusts*, 2 *De G., J. & Sm.*, 365; *Fletcher vs. Fletcher*, 4 *Hare*, 67; *Exton vs. Scott*, 6 *Simons*, 31; *Bowles vs. Woodson*, 6 *Grat.*, 78; *Parrill vs. McKinley*, 9 *Grat.*, 1; *Bunn vs. Winthrop*, 1 *John. Ch.*, 329; *Perry on Trusts, secs.* 82, 95, 103; *Lewin on Trusts*, 56; *Hill on Trustees*, 51, 63, 64, 65, 83, 110; *Browne Stat. Frauds, secs.* 97-99, 104, 109, 110; *Adams' Eq.*, 79, 80; 2 *Rob. Prac.*, 10, 11.

To the suggestion that the possession of the deed in this case was "equivocal," the reply is—*First*, a trustee is never permitted to act *ambiguously*, and afterwards take advantage of the doubt, and claim to have acted, not as trustee, but in some other character. *Lewin on Trusts*, 168; *Spalding vs. Brent*, 3 *Md. Ch. Dec.*, 415; *Wayman vs. Jones*, 4 *Md. Ch. Dec.*, 504.

*Second*—By no default of trustee shall *cestuis que trust* be prejudiced. 1 *C. Dig., T. XII, Ch. IV, sec.* 6.

It being the *duty* of Carson to consummate his agreement by actual delivery to himself as trustee, and being found in possession, the case is easily and especially within

the principle that regards that *as* done which ought to be done—and, therefore, in his formal acknowledgment of the paper before a justice of the peace, equity can perceive no other legitimate object than to signalize the formal delivery by Carson, the individual, and the simultaneous acceptance of the trust by Carson, the trustee.    *Flickinger vs. Hull,* 5 *Gill,* 74-5.

*Third.*—There are circumstances in this case from which intention to deliver may be legitimately inferred, if not conclusively presumed.    *Doe d. Garnons vs. Knight,* 5 *B. & C.* 671;  *Goodright vs. Straphan, Cowp.,* 201;  *Talbot vs. Hodson,* 7 *Taunt.,* 251;  *Brown & Cawwood 'vs. Murdock & Brawner,* 16 *Md.,* 532-3.    Valuable consideration, *Alexander vs. Ghiselin,* 5 *Gill,* 185-6;  *Exton vs. Scott,* 6 *Simons,* 31.    Express pre-existing trust.    Breach of trust, *ab ante. Co. Litt.,* 112 *b.*    Moral obligation to secure. *Aldridge vs. Weems,* 2 *G. & J.,* 48.    Special statutory duty.    *Art.* 93, *sec.* 10 *of the Code.*    Previous request and promise.    *Aldridge vs. Weems,* 2 *G. & J.,* 47, 48.    Express contract.    Terms explicit.    Done advisedly.    Done deliberately.    Execution in the presence of an attesting witness.    *Hope vs. Harman,* 11 *Jurist,* 1097;  *Exton vs. Scott,* 6 *Simons,* 31;  *Currie vs. Donald,* 2 *Wash.,* 58; *Miller's Estate,* 3 *Rawle,* 312.    The short form of attestation prescribed by the Code is the statutory equivalent for the common law form which it superseded, and "Test" here imports "signed, sealed and delivered in presence of."  1 *Co.* 140, *&c.*;  2 *Bl. Com.,* 307;  1 *Har. Ent.,* 61, 75;  *Jones vs. Higgins, Law Rep.,* 2 *Eq.,* 544.    Formal acknowledgment.    *Scrugham vs. Wood,* 15 *Wend.,* 545; *Byers vs. McClanahan,* 6 *G. & J.,* 255-6.    Deed actually placed by Carson beyond his control, for the purpose of acknowledgment.    Had Carson died at that instant, there could have been no question.    *Doe d. Garnons vs. Knight,* 5 *B. & C.,* 671.

After acknowledgment, the deed in the possession of Carson, as *Trustee,* was not under the moral or lawflu control

of Carson the *individual,* though under his physical power.
*Jeffries vs. Alexander,* 8 *Ho. Lords,* 594.

The deed was carefully preserved, (*Ward vs. Lewis,* 4
*Pick.,* 522,) and left uncancelled, (*Aldridge vs. Weems,* 2
*G. & J.,* 48,) in a place where it was designed to be found
by those entitled. And finally came regularly into their
possession through the lawful official channel.

These circumstances, integrated, are strands of a cable,
which, with the tenacity of combined act and intent, binds
*the trust to the land.* And the combined force of these
circumstances is proof against any inference which might
be drawn from the failure to stamp and record, even if
unexplained. But the failure to stamp and record is suffi-
ciently explained by the testimony. Carson was under
the delusion that he was "*perfectly solvent,*" almost down
to the day of his death.

Was the affidavit of consideration necessary to the
validity of the paper? The Code applies only to legal
mortgages, technically such, and there being here neither
a conveyance to the creditors direct, nor a defeasance, nor
an express equity of redemption, the paper is not within
the requirement. *Art.* 24, *secs.* 28, 29, 30, *of the Code;*
*Charles vs. Clagett,* 3 *Md.,* 82, 90, 92, *&c.; Phillips vs.
Pearson,* 27 *Md.,* 256; *Stockett, Admr. vs. Holliday and
wife,* 9 *Md.,* 480, 492, 499; *Fouke vs. Fleming and Doug-
lass,* 13 *Md.,* 392, was not only a quasi mortgage, but bill
of sale.

The instrument can in no event, be regarded in the view
of a Court of Equity, as a mortgage *per se,* but at most as
an agreement to give such a mortgage as the creditors can
make legally effective, by compliance with the law.

Looking at the sense and spirit, the *reason* of the law,
all technicalities aside, as a law designed for the protection
of creditors against fictitious and collusive incumbrances
of record, it is more than gratified in this case, as it must
be in all similar cases, since equity will entertain no appli-

cation to enforce a specific lien against creditors, unless there is first laid the foundation of a *valuable considera-tion*, and that not by a cheap *ex parte* affidavit merely, but by plenary *proof*, of a far more satisfactory and conclusive character.

As to the Revenue stamp.  No objection can be con-sidered here, not specifically presented below.  *Andrews vs. Poe*, 30 *Md.*, 485.

Subsequent repeal of the law retroacts and rehabilitates. 36*th sec. Act of Congress, approved 6th June*, 1872; 17 *Stat. at Large*, 256; *Keller vs. State*, 12 *Md.*, 322; *State, &c. vs. Norwood, et al.*, 12 *Md.*, 195; *Hoppock vs. Stone*, 49 *Barb.*, 524; *Gibson vs. Hibbard*, 13 *Mich.*, 215.

As a memorandum to manifest or prove a trust under the 7th section of the Statute of Frauds, no stamp is necessary.  *Maccubbin vs. Cromwell*, 7 *G. & J.*, 164.

As an agreement under the 4th section, the stamp was correct and duly affixed.  *Act* 1866, 13 *July, sec. 9*, 14 *Stat. at Large*, 143; *Cooke vs. England*, 27 *Md.*, 28; *Dowler vs. Cushwa*, 27 *Md.*, 354; *Peoria Ins. Co. vs. Perkins*, 16 *Mich.*, 380; *Moncrieff vs. Goldsborough*, 4 *H. & McH.*, 283; *Tiernan vs. Poor and Wife*, 1 *G. & J.*, 227–8; *Johnston vs. Canby*, 29 *Md.*, 216.

The paper was admissible, even if incorrectly stamped, in the absence of proof that omission to affix a correct stamp was in fraud of the revenue.  *Campbell vs. Wilcox*, 10 *Wall.*, 421.

As to the recitals.  The recital of a previous parol agree-ment is merely matter of inducement to the subsequent written contract which merges or supersedes it.  *Alexander vs. Ghiselin*, 5 *Gill*, 184-5; *Exton vs. Scott*, 6 *Simons*, 31.

As to the preference given.  Subsequent creditors have no equity to share with the appellees their preference over prior creditors, and are entitled to no more than their just dividends.  Their claims are adjusted as if the deed had never been made.  *Pannell & Smith vs. Farmers Bank*, 7

*H & J.*, 206. And as to *prior* creditors, their real trouble is not that the deed was not recorded, but that *they* were not the ones perferred by it.

The sale of the five lots, was but the exercise of a privilege reserved by Carson himself, and made a part of his contract by incorporation of the mortgage to Brent, which contains a special covenant contemplating voluntary sales to pay the mortgage debt. It is no presumption of revolution or cancellation as to the property remained unsold, and even if it were, such presumption would be futile. Carson had gone too far to revoke even a voluntary disposition, much less a trust or contract for valuable consideration. *Re Way's Trusts*, 2 De G., J. & S., 365; *Fletcher vs. Fletcher*, 4 Hare, 67; *Clavering vs. Clavering*, 2 Vern., 473; *Barlow vs. Heneage, Prec. Ch.*, 210; *Jeffries vs. Alexander*, 8 Ho. Lord, 594, 649, 667.

The mortgage debt may have been paid, and for aught that appears was paid, by the proceeds of the five lots sold, there being no proof of other means at that time available or used for that purpose. *Pinkett vs. Wright*, 2 Hare, 129; *Ringgold vs. Ringgold*, 1 H. & G., 11, 76.

Fraud, breach of trust, is never to be presumed, and yet must be presumed upon the hypothesis that Carson sold the five lots for any other purpose than that contemplated in the mortgage covenant.

The Brent mortgage was nothing more than a prior lien, a mere security for money, a chattel interest, a *chose in action.* It gave no estate or title. *Timms vs. Shannon*, 19 Md., 296. The debt being paid, the mortgage was discharged, and there was the end of it. Exit mortgage. The discharge of a prior incumbrance by the party whose contract duty it was to discharge it, enures as of course to the benefit of subsequent incumbrancers. *Lewin on Trusts*, 518; *Otter vs. Lord Vaux*, 2 K. & J., 650, *Affirmed in* 39 E. L. & E., 611; *Norris vs. Caledonian Ins. Co. Law R.*, 8 Eq., 132; *Frazer vs. Jones*, 5 Hare, 480-1.

There is nothing in the pleadings or proof upon which to call in this Court for a remarshalling of assets, nor is it shown that by stating the account differently any benefit would enure to the appellants, or that they are prejudiced by the decree in this respect. *Gen'l Ins. Co. vs. U. S. Ins. Co.*, 10 *Md.*, 529.

The equitable view is that the discharge of the mortgage was for their benefit, by enhancing the value of the property disencumbered, and thus increasing their chances for payment out of the surplus that might remain, after satisfying the prior lien of the appellees. That there is, in fact, no such surplus in this case is not the fault of the appellees, but the common misfortune. *Hughes vs. Edwards*, 9 *Wheat.*, 489.

The correctness of the decision of the Circuit Court upon the question of laches is too obvious for comment.

Laches are no bar to a mere annuitant charged upon an income, nor to remaindermen, who have no immediate possessory title to the beneficial interest. *Farmers and Mechanics' Bank vs. Wayman and Stockett*, 5 *Gill*, 358; *Hawkins vs. Gardner*, 2 *Smale & G.*, 441. Nor to *cestuis que trust* against an express trustee. *Hanson vs. Worthington*, 12 *Md.*, 441; *Mitchell vs. Mitchell*, 29 *Md.*, 581; *Crook vs. Glenn*, 30 *Md.*, 71; *Leiman's Estate*, 32 *Md.*, 239. Nor against his representatives. *Brittlebank vs. Goodwin, Law Rep.*, 5 *Eq.*, 545; *Art.* 47, *sec.* 24 *of the Code.* Nor against his creditors, upon the principle established in *Whitworth vs. Gaugain*, 3 *Hare*, 416.

The order allowing counsel fees was irregularly passed, *ex parte*, without notice or proof. *Adams Eq.*, 348.

The cross-appellants have received no benefit from the services for which compensation was allowed, never authorized them, and as to them the order has no element of contract to sustain it, express or implied.

The fund in question not only belongs in part to the appellants as general creditors, but is already to a definite

extent specifically appropriated to them, and is also the only fund to which they can resort for their costs in this case, and in the case of *Pairo vs. Carson's Admrs.*, and in the case of *Edes, et al. vs. Same,* and if an order for $500, not saving our rights is proper, so would be an order for $1,500 or the entire reserve fund.

As respects the appellant, Mrs. Pairo, the services, so far from being of any benefit to her, would, if successful, have left her nothing to pay counsel with on either side.

BARTOL, C. J., delivered the opinion of the Court.

This is a contest among the creditors of Thomas J. Carson, deceased, as to the proper distributions of the money arising from the sale of his real estate, made by Randolph Barton, Esq., Trustee.   The property sold consists of two of the lots of ground described in the deed of the 27th day of April 1868, executed and acknowledged by Thomas J. Carson, and purporting to convey to himself as *Trustee* seven lots of ground, in *trust* for the uses and purposes therein mentioned.   The appellee *Phelps* is the Trustee under the will of the late Samuel C. Edes, appointed in the place of Thomas J. Carson deceased, and the other appellees are the *cestuis que trust* under the same will, and claim under the deed of the 27th day of April, 1868, a lien and priority in the fund, as against the general creditors of Carson, who were such prior to the execution of the deed.

This lien and priority was allowed by the Circuit Court in ratifying the auditor's accounts C and D and is resisted by the appellants upon several grounds which will be noticed hereafter.

The main question to be considered is the operation and effect of the deed of April 27th, 1868.

The deed remained in the possession of Thomas J. Carson, and some months after his death, was found among his papers relating to the estate of Edes, and was by his

administrators delivered to Mrs. Long the administratrix *de bonis non* of Edes.

The appellants contend that the deed having been retained in Carson's possession during his life-time, never was delivered by him, and never became operative as a conveyance, or a contract for a conveyance. They further contend that even if the deed had been delivered, it is not valid at law and will not be held good in equity as a contract; because being in the nature of a mortgage an affidavit "that the consideration was true and *bona fide*" as prescribed by the Code, Art. 24, section 29, was necessary to render it valid against creditors. It is also objected that the deed is invalid for want of the stamp required by the Acts of Congress then in force. With respect to the last objection, the want of a stamp, this defect appears to have been supplied by the affixing of a stamp and the payment to the collector of the penalty prescribed by Act of Congress, which was held in *Cook vs. England,* 27 *Md.,* 28, and *Dowler vs. Cushwa, ibid,* 354, to be a substantial compliance with the stamp law. But if this be not so, the want of the stamp would not make the instrument invalid, or render it inadmissible in evidence, in the absence of proof that the stamp was omitted with intent to defraud the revenue, as was decided in *Black vs. Woodrow & Richardson,* 39 *Md.,* 194, following and adopting the construction of the Acts of Congress, which was established by the Supreme Court in *Campbell vs. Wilcox,* 10 *Wal.,* 422. As to the want of an affidavit. The Code, Art. 24, section 29 declares that "no *mortgage* shall be valid, except as between the parties thereto, unless there be endorsed thereon an oath or affirmation of the mortgagee, that the consideration in said mortgage is true and *bona fide,* as therein set forth."

This provision has been construed as applying to "deeds of mortgage technically such and not to deeds of trust." *Stockett vs. Holliday,* 9 *Md.,* 492, 499. This instrument

is by its terms and operation a deed of trust, not a mort-
gage, the grantee took the property not as mortgagee but
as trustee, not only in name but in reality, both from the
nature of the estate conveyed to him, and from his rights
and duties thereunder; the property was intended to be
held by the grantee, as trustee for the benefit of the parties
therein named as *cestuis que trust*; no equity of redemption
in the property remained in the grantor; but there was
a resulting trust in his favor, under which, after the exer-
cise of the power of sale by the trustee, he would be
entitled to receive *in money*, any balance that might re-
main after the purposes of the trust were accomplished by
paying to the *cestuis que trust* in remainder under Edes's
will their respective shares of the trust fund. It is very
clear to us that to such an instrument, the provision of
the Code has no application, and that no affidavit was
necessary. The deed was regularly executed by Carson,
attested and formally acknowledged according to law. To
make it operative as a conveyance delivery was neces-
sary; was it delivered? this is the next question to be
considered.

The law on this subject is correctly stated by the Judge
of the Circuit Court "that no particular form of procedure
is necessary to effect a delivery; it may be by words or
acts, or by both combined; but in all cases the intention
that it shall be a delivery must exist, and acceptance may
be presumed from the grantee's possession." But the
learned Judge adds that "in this case the possession
is equivocal, the grantor and grantee being the same
person," and he came to the conclusion that "there are
no circumstances from which an intention to deliver can
be inferred." In this conclusion we do not concur. An
examination of the instrument with the facts and circum-
stances attending the transaction, has satisfied us that
there was a valid and effectual delivery of the deed, and
that such was the intention of Carson. It was not a mere

voluntary deed, but founded upon a valuable considera-
tion: Carson as trustee under the will of Edes had, by
the order of the Orphans' Court, obtained possession of
the fund remaining in his hands as executor; he was
under the strongest legal and moral obligation to secure
it to the parties entitled, the beneficiaries under the will.
In addition to this, as shown by the recitals in the deed,
he had upon their request, made an express contract to
secure the same. For that purpose the deed was prepared
by his attorney at his instance, and was formally executed,
attested and acknowledged, and was by him carefully
preserved among the papers relating to the trust estate.
It is difficult to explain these facts upon any other theory,
than an intention on his part that the deed should operate
as a creation or declaration of trust for the benefit and
security of the parties in whose favor it was made. The
fact that the paper remained in his possession can have
little force or significance in disproving a delivery. Being
a conveyance to himself as trustee; after its acknowledg-
ment, it was in his possession in that character; and no
longer under his moral or lawful control as an individual.
There could be nothing equivocal in such possession; as it
was his legal duty to hold the deed as trustee, the law
presumes the possession was held by him in that character.
"If a trustee act *ambiguously,* he cannot afterwards take
advantage of the doubt and say he acted not as trustee,
but in some other character." *Lewin on Trusts,* 168.

"Where a man has several capacities, and is found in
possession of property, the law will attach the possession
to the capacity in which of right it ought to be held."
*Flickinger vs. Hull,* 5 *Gill,* 60.

The omission of Carson to place the deed upon record,
is relied on by the appellants as a significant fact to show
that he did not intend it as a complete and binding act;
but we think this is explained by the fact that he con-
sidered himself perfectly solvent as late as 1869, as proved
by the witness Vickery.

Carson & Vickery, Admrs. of Carson, *et al. vs.* Phelps, Trustee, *et al.*

Being of opinion that the deed was perfected by delivery, and that Carson's possession of it was in the character of trustee; it operated to create a perfect and valid trust in favor of the appellees.

"If a settlor purpose to convert himself into a trustee, then the trust is perfectly created, and will be enforced so soon as the settlor has executed an express declaration of trust, intended to be final and binding upon him, and in this case it is immaterial whether the nature of the property be legal or equitable—whether it be capable or incapable of transfer." *Lewin on Trusts,* 56, (*5th Eng. Ed.*)

The same doctrine is stated in *Hill on Trustees,* 51 *m,* and on page 63 the author says, "A trustee of real or personal property may be created by any formal instrument, whether deed or will, which passes the legal title to the trust estate, and contains a proper declaration of trust; or without any transmutation of possession, the owner of property many convert himself into a trustee of it by a proper declaration of the trust." We refer also to *Maccubbin vs. Cromwell,* 7 *G. & J.,* 157, 163, 164, and to *Aldridge & Higdon vs. Weems & Hall,* 2 *G. & J.,* 37, 47, 48.

This trust thus validly created is binding against Carson and his representatives, and notwithstanding the failure to record the deed, it is valid and will be enforced in equity against his general creditors. This doctrine is well settled and has been recognized in Maryland in a great number of cases, and *is* alike applicable, whether the trust be expressly created by deed unrecorded, or whether it arises from a valid contract in writing for specific security. *McMechen vs. Maggs,* 4 *H. & J.,* 132; *Tiernan vs. Poor,* 1 *G. & J.,* 216; *Moale vs. Buchanan,* 11 *G. & J.,* 315; *Repp vs. Repp,* 12 *G. & J.,* 341; *Alexander vs. Ghiselin,* 5 *Gill,* 139, 185; *Price vs. McDonald,* 1 *Md.,* 403, 414, 415; *Johnston vs. Canby,* 29 *Md.,* 216.

Carson & Vickery, Admrs. of Carson, *et al. vs.* Phelps, Trustee, *et al.*

In this case the effect of the decision of the Circuit Court in ratifying accounts C and D, was to give to the appellees a lien and priority over the general creditors of Carson, who were such at the time the deed was executed; as to the subsequent creditors, that is to say, those who became creditors after the date of the deed, they were allowed to share *pro rata* in the distribution, in the same manner as if the deed had not been made. This mode of distribution was adopted in conformity with the ruling in *Pannell vs. Farmers' Bank,* 7 *H. & J.,* 202; which was a case of an unrecorded mortgage. Whether that rule was applicable to the present case, it is not necessary to decide. The appellees have made no objection to the account, or claimed any priority over the subsequent creditors. So far as the appellants are concerned there can be no doubt or question of the equitable rights of the appellees to their lien upon the fund, and to the priority allowed them in account C.

The provisions of the Code, Art. 24, secs. 19 and 21, allowing deeds relating to land duly acknowledged to be recorded at any time, saving the rights of creditors and purchasers without notice, cannot be construed as impairing the rights of parties claiming under a trust; or as affecting in any manner the equitable rights and liens of parties as recognized by the established doctrines of Courts of Equity.

It appears from the record that at the time the deed of trust was executed, the property therein described was encumbered by a previous mortgage executed by Carson, which contained a covenant providing for its payment by voluntary sales of the property mortgaged. Five of the seven lots were afterwards sold and the mortgage released. The effect of that was simply to remove the prior incumbrance, and leave the two remaining lots unincumbered, subject to the equitable rights of the *cestuis que trust* under the deed, and gives no right to the appellants to claim a marshalling of the fund, so as to subject the two remaining

Carson & Vickery, Admrs. of Carson, *et al. vs.* Phelps, Trustee, *et al.*

lots to the payment of a proportional part of the original mortgage debt.    There is no evidence in the case to lay the foundation for any such claim ; and it is very clear that the rights of the appellees to their lien and priority under the deed, could not be impaired either by the payment of the mortgage by Carson, or by the breach of trust committed by him in selling a portion of the property.

We agree with the Judge of the Circuit Court, that there is no just ground for charging the appellees with laches in asserting their rights, and being of opinion for the reasons stated that the accounts C and D were properly ratified, the order of the Circuit Court will be affirmed and the cause remanded.

> *Order affirmed, and*
> *cause remanded.*

(Decided 6th March, 1874.)


The appeal by the representatives of the estate of Edes, was taken from the order of the Circuit Court passed on the petition of Messrs. Steele and Snowden, solicitors, by which they were allowed out of the personal estate of Carson a fee of $500, as compensation for their services in arguing the case of *"Pairo vs. The Administrators of Carson, 37 Md.,* 467.''

We have considered the several objections to this order urged by the appellants, and are of opinion that the fee was properly allowed.

The case was one of considerable importance to the estate of Carson ; it had been decided below in favor of the administrators ; it was their duty to employ counsel to try the cause upon the appeal ; and it is equitable that the estate should be charged with the counsel fees.    The proof shows that the amount allowed is a reasonable compensation for the services rendered.

> *Order affirmed.*

(Decided 6th March, 1874.)